MAGOVERN & CO. v. RICHARD.

BATES, REED & COOLEY v. SAME.

1. An insolvent debtor has the right to prefer one of his creditors, provided it is not done in a general assignment for the benefit of all his creditors, and, provided further, it is not accepted by the creditor with knowledge of the debtor's insolvency, within ninety days before such debtor makes a general assignment. An ordinary mortgage executed by an insolvent debtor with intent to secure and prefer one creditor over others and covering a large portion of his property, is not void under the assignment act, *Gen. Stat.,* § 2014.

2. A decree should not be sustained where it is based upon a ground not raised by the pleadings.

3. Where a mortgage is based upon a valuable consideration and is not taken for the purpose of hindering, defeating, or delaying creditors, it is not void under the statute of Elizabeth, even though the mortgagor was insolvent, the mortgage embraced all of the debtor's visible property, and by agreement was not to be recorded for 40 days.

4. Findings of fact by the Circuit Judge from testimony heard by him, reversed.

MR. JUSTICE MCGOWAN, *dissenting.*

Before COTHRAN, J., Darlington, November, 1886.

These were actions by Magovern & Co. against G. Richard and Bollmann Brothers, and by Bates, Reed & Cooley against the same defendants. The cases are fully stated in the Circuit decree, which was as follows:

G. Richard was engaged in business as a merchant, at Darlington, in 1883. In the summer of that year he was insolvent, but purchased a large stock of goods at the north on credit. He was then largely indebted to his co-defendants, Bollmann Bros., with whom he had been doing business since 1879. They held no security for their demands against him until November 13, 1883, when he executed, in their favor, a bond in the sum of ten thousand dollars, to be paid within sixty days from its date, and secured the same by a chattel mortgage on all his stock of goods, wares, fixtures, &c., in his store and bar at Darlington. This mortgage, by special agreement between the parties, was not to be recorded for forty days after its date. The bond became due on January 10, 1884, and on the day following W. P. Cole, as the agent of Bollmann Bros., seized the said goods, &c., for the purpose of foreclosing the said mortgage.

And on the same day of January, 1884, Magovern & Co. commenced their action in behalf of themselves and of all other creditors of G. Richard, save Bollmann Bros., who might come in in due time and contribute to the expense of the action. They alleged the indebtedness of Richard by note, dated August 20, 1883, in the city of New York, in the sum of $387.87, due November 20, 1883; his indebtedness to Bollmann Bros.; the execution of said chattel mortgage to Bollmann Bros.; that Bollmann Bros. had cause to believe Richard to be insolvent; that the mortgage was executed in fraud and in violation of chapter 72, of General Statutes, and that Richard had no other property out of which the claims of his unsecured creditors could be satisfied. The complaint prayed that the mortgage be adjudged to be an assignment, giving preference, &c., be declared fraudulent and void; that a receiver be appointed, for injunction, &c.

Judge Hudson granted an order of injunction at his chambers, on January 13, 1884, and the defendants answered and moved for a dissolution of the injunction before Judge Kershaw, at Orangeburg, on the grounds that Magovern & Co. were not

judgment creditors of Richard, and that a mortgage was not an assignment within the provision of the 72d chapter of the General Statutes. Richard admitted, in his answer, his indebtedness to Magovern & Co., and to Bollmann Bros., but denied his insolvency, the conveyance of all his property to Bollmann Bros., and alleged that the mortgage was executed in good faith, to secure his past due demands to Bollmann Bros., and advances to be made to him by them. Bollmann Bros. admitted Richard's indebtedness to them in the sum of $8,513.78, but denied his insolvency, and also alleged that the mortgage was executed by Richard *bona fide*, upon being granted an extension of payment as to his past indebtedness, and in consideration of advances to be made, and that they had actually advanced to him since the execution thereof the sum of $854.59. Judge Kershaw dissolved the injunction January 28, 1884, holding that Magovern & Co. were not judgment creditors of Richard, and that a mortgage was not an assignment, under chapter 72 of the General Statutes.

Bates, Reed & Cooley, on February 8, 1884, instituted their action against the defendants under the 13th Elizabeth. The complaint prayed judgment that the mortgage be adjudged fraudulent and void, that a receiver be appointed, for injunction, &c. Richard and Bollmann Bros. answered, making a general denial of all the allegations of the complaint, except that Richard admitted his indebtedness to the plaintiff, and both alleged that the mortgage was executed in good faith and as a security for advances, as in the Magovern case. On February 5, 1884, I being then on the Fourth Circuit, granted an order of injunction and a rule to show cause why a receiver should not be appointed, and, afterwards, upon a motion to dissolve the injunction, a consent order was passed by me, directing the sale of the goods, and the delivery of the proceeds thereof to Bollmann Bros., upon their entering into bond for the forthcoming of the same.

The sum involved in these cases is in the neighborhood of $3,-000. They were heard together by agreement of counsel upon testimony taken before the trial, and the oral evidence of several witnesses taken before me. I have met no difficulty in reaching a conclusion as to the character of this transaction. The insolvency of Richard was clearly established by several witnesses of

the highest character. ' In fact, he boasted himself to Mr. Ward, one of the witnesses for the plaintiffs, that he went to New York with only $100, and bought a large stock of goods. This was in the summer of 1883, when Mr. Ward says, he was not only insolvent, but had been for some time before. The dates of his purchases show that they were made in the summer of 1883, and that his indebtedness therefor became due a little later than November 13, 1883, the date of his mortgage to Bollmann Bros. Richard himself must have known that he was insolvent, and it would seem reasonable to conclude that Bollmann Bros. knew it also. He had been dealing with them for several years, and fell behind with them each year, owing them the large sum of $8,513.78. His real estate was under mortgage to Pelzer, for its value, and Mr. Ward says he had very little in the way of goods in store when he visited the north to buy goods. This condition of his debtor could hardly have escaped the skill and experience of a merchant of forty years standing.

But if it did, it would seem that Bollmann Bros. did have reasonable cause to believe Richard to be insolvent in November, 1883. When the season had well advanced he had failed to reduce his heavy indebtedness, and had no security to furnish except a chattel mortgage on an unpaid-for stock of goods, for the large sum of ten thousand dollars. Others knew his insolvency well. The cashier and teller of the Darlington National Bank, as well as Mr. Ward, say that Richard was in bad credit; notes were protested, &c. In these days of rapid communication, such damaging facts to the credit of a merchant travel with great rapidity, even to the most distant points, and the creditor is timely advised thereby of the failing condition of his debtor, almost without effort on his part. Besides this, it seems to be a most remarkable circumstance, that Bollmann Bros. should not have known that Richard's real estate was under mortgage, and that he was in bad credit, and still more so, that they could have neglected to make inquiry as to the financial condition of one of their customers who owed them so much and was yearly falling behind. From these circumstances and the undoubted testimony, I conclude that Richard was insolvent at the date of the execution of the mortgage, and that Bollmann Bros. knew it.

But it is said that even if this be so, that the mortgage was executed in good faith and was therefore valid. Richard's condition, his indebtedness to Bollmann Bros., and the large demands becoming due for the goods purchased, renders it very difficult to believe that he had any hope or intention to pay the mortgage when he made it, or that Bollmann Bros. thought that it would be paid when they received it; but when the time of payment of the mortgage is fixed by the parties at sixty days from its date, the mortgage is made to cover unpaid-for goods in store, and by special agreement to be withheld from record for forty days, it is impossible for any fair mind to resist the conclusion, that it was a mere device to evade the statute, and prefer Bollmann Bros. by a mortgage, as he could not do by direct assignment, and to defeat, delay, and defraud the other creditors of Richard. The explanation offered by the parties for not recording the mortgage, so far from being a satisfactory removal of a very damaging circumstance, is, actually, more significant than the circumstance itself. Because it is obvious that the knowledge of the mortgage derived from the records could not have had the effect claimed for it—that of injuring Richard in his collections—but would, on the contrary, have alarmed Richard's northern creditors, whose claims were about becoming due, and might have led them to take steps to prevent the seizure and sale by Bollmann Bros. of the goods for which Richard had not paid. The recording of the mortgage did have this effect upon these plaintiffs, and set on foot immediately these vigorous proceedings, and it does not appear that Richard was injured in his collections.

The defendants contend, however, that the mortgage cannot be an assignment under section 2014 of the General Statutes, because it does not convey the entire property of Richard, as was the case in *Wilks* v. *Walker*, and in *Austin, Nichols & Co.* v. *Morris*. While this is true, yet these cases proceed upon the doctrine that the law deals with the mischief to be prevented, so that Richard transferred to Bollmann Bros. all of his tangible property of value and applicable to payment of his debts. Leaving out a shell or shadow of property, these cases would be authority for granting the relief prayed for by the Magovern & Co. complaint. The courts of Alabama have construed a similar

statute to ours, to this effect: that a conveyance by which a debtor parts with substantially all his property, is an assignment. *Waters* v. *Matthews*, 1 *South. Law T.*, No. 27, page 622.

But it is alleged that there were good liens and accounts to the large sum of $8,000, and real estate outside of the mortgage to Bollmann Bros., worth $5,000. As to the first—there is no evidence save that of Richard himself—the value of evidence on this point could not fail to be appreciated; yet there were no books, no records, no written or oral evidence of a dollar, except his own statement, and he was impeached by witnesses of the highest character, as unworthy of belief, and there was no attempt to rebut it. Independent of this, the circumstances show that it is not true; for if he had possessed these valuable choses in action, he would have placed some of them with the bank and saved his paper from protest. He would have transferred in part, some of them to Bollmann Bros., perhaps all of them, as he owed them about equal amounts, or else he would have offered them to Mr. Ward when he tried to borrow money from him, or, perhaps, to these plaintiffs, and escaped this suit. It is improbable that he had these valuable assets, or they would have been used in some way to alleviate his desperate financial condition.

Then as to the real estate, it may be remarked that it was the family residence, and under a mortgage to Pelzer for $4,000. It appears, however, that Pelzer paid Richard $1,000 for the lot, and took his deed in satisfaction of the mortgage. This, however, does not establish the value of the lot, because the creditor is frequently influenced to pay a bonus to a failing debtor, to acquire possession of property, as is illustrated in these cases, by advancement to Richard by Bollmann Bros. of $854.59, to acquire even a chattel mortgage of ten thousand dollars on a stock of goods which sold for some $3,000 or less. It would be just as reasonable to conclude that Richard's real estate was worth $1,-000 more than Pelzer's mortgage, as it would be to hold that his stock of goods was worth $854.59 more than $8,513.78, which he then owed Bollmann Bros. Pelzer paid his $1,000 to get the deed, and Bollmann Bros. $854.59 to get their mortgage, it would seem.

But the value of the real estate was not more than $3,000 or

$3,500, in the opinion of several witnesses of high character and large intelligence, one of whom was a dealer in real estate, and it was in proof that the lot on which the Enterprise Hotel was subsequently erected on the opposite side of the street, a larger lot, better located, was sold about that time for only $4,000, one half cash, the balance in the stock of the company. The Richard lot may have been of equal value, but the witnesses thought otherwise; still, as it was the family residence and mortgaged to Pelzer for $4,000, it furnished no means of paying the creditors. It was, as to them, the shadow of property. The law does not deal with speculative values, and I cannot conclude because Mr. Pelzer has seen fit, for unexplained reasons, to pay Richard $1,000 more than his mortgage for the property, that that sum fixes its value. I find, therefore, that the real estate of Richard was mortgaged to Pelzer for its market value, and that he had no property outside of the property included in his mortgage to Bollmann Bros.

It is contended, however, in argument by the defendant's counsel, that the dissolution of the injunction by Judge Kershaw, in the case of Magovern & Co., is fatal to the plaintiffs in that case, because they neglected to appeal therefrom. I cannot so hold. There is no imperative rule in regard to appeals from orders dissolving injunctions. 2 *High Inj.*, 1702; *Dudley Eq.*, 29. There was no intention to hear the case on its merits by Judge Kershaw, and no right so to do at chambers. *Hornesby* v. *Burdell*, 9 *S. C.*, 303.

In the case of Bates, Reed & Cooley it was insisted that the mortgage would be sustained as to the sums advanced after its execution. I do not concur in this view, because the money was not advanced in good faith as a *bona fide* loan, but that he was paid by Bollmann Bros. that sum of money for the preference, and that the mortgage was both conceived and executed by Richard, and received by Bollmann Bros., with the intent to hinder, delay, and defeat the other creditors of Richard. So, the fact that Bollmann Bros. actually made advances to Richard after the execution of the mortgage, cannot alter the character of the original transaction as made to defeat and defraud the other creditors of Richard, I find that the transaction was fraudulent. *Beattie* v.

*Pool,* 13 *S. C.,* 379; *McSween* v. *McCown,* 23 *Id.,* 342; *Jones Chat. Mort.,* 350. When a conveyance is good in part and bad in part, it is void *in toto,* and no interest passes to the grantee under the part which is good. 14 *Johns.,* 459; *Wait Fraud. Con.,* §§ 194, 434.

It is, therefore, sufficient to say that I find as matter of fact, that the evidence fully sustains all the material allegations of the complaints in both actions, to wit: that Richard was insolvent at and before he executed the mortgage in question. To Bollmann Bros. he gave it, with intent to prefer Bollmann Bros. to the exclusion of his other creditors; that he executed it and they received it with intent to hinder, delay, and defraud the other creditors of Richard, and that it covered all of his property of value and applicable to the payment of his debts. In reaching these conclusions, I have not been influenced by the evidence establishing numerous forgeries on the part of Richard, subsequent to the execution of the mortgage; for, independent of this, I consider the testimony strong and convincing as to the fraudulent character of the transaction.

I conclude as matter of law: 1. That the mortgage from G. Richard to Bollmann Bros., dated November 13, 1883, of the goods, wares, &c., mentioned in the complaint, is in violation of sec. 2014 of the General Statutes, and void. 2. That said mortgage was executed by G. Richard, and received by Bollmann Bros. with intent to hinder, delay, and defeat the creditors of G. Richard, and is fraudulent and void as against the plaintiffs, and those creditors of G. Richard who have joined them in these proceedings.

It is therefore ordered, adjudged, and decreed, that said mortgage be set aside as fraudulent and void, and all rights thereunder be vacated and annulled as against these plaintiffs, and those creditors of G. Richard who have joined them in these proceedings, and that the defendants, Bollmann Bros., do pay over to the clerk of this court, within fifteen days from the date of the filing of this decree, the proceeds of sale of the property sold under the former order of this court, together with the interest due thereon, and that they do pay the costs of this action. It is further ordered, that the said proceeds and interest be distri-

buted by the said clerk among the plaintiffs and the other credi-
tors of G. Richard who have joined them in these proceedings
*pari passu*, or in proportion to the amount of their respective
debts, after the payment of a fee to the attorneys of record in said
cases. It is further ordered, that the clerk of this court do ascer-
tain and report what would be a proper fee to be paid to said at-
torneys, one fee to include services in both cases. And it is
further ordered, that the plaintiffs and defendants have leave to
apply at the foot of this decree for such further orders as they
may deem necessary to speed the cause.

The order of Judge Kershaw, dissolving the injunction, re-
ferred to in the Circuit decree and also in the opinion of this
court, was as follows:

A motion is made before me at chambers upon proper notice to
dissolve a preliminary injunction ordered by his honor, Judge
Hudson, upon the *ex parte* application without notice of the
plaintiffs. The defendant, G. Richard, a merchant in failing cir-
cumstances, executed and delivered to Bollmann Bros. a chattel
mortgage covering his stock of goods, leaving his other creditors,
of whom are plaintiffs, to whom he is largely indebted, insuffi-
ciently provided for. The plaintiffs have not established their
demands by a judgment at law, and this is the principal ground
upon which the motion here is rested. Admitting the general
principle that they would have no status in a Court of Equity
in an ordinary case without having first established their case
by a judgment, plaintiffs insist that they have a right to this
action, under section 12 of the act of February 9th, 1882, since
incorporated in the General Statutes. In order to establish this
they insist that the aforesaid chattel mortgage to Bollmann Bros.
is an *assignment* for the benefit of creditors within the purview of
that statute.

The chapter of the general statutes, of which this statute is an
amendment, was the same in effect as the act of 1828 (6 *Stat.*,
365), *General Statutes* (chap. 97, sec. 5, pt. 2), and continued on
this principle. The law has, therefore, been of force for more
than half a century, and it never yet has been supposed that a
chattel mortgage executed by a debtor to a creditor to secure an
outstanding debt, was an assignment for the benefit of creditors,

though such mortgages have been of frequent occurrence, and the subject of litigation upon other grounds. The provisions of the act are totally irreconcilable with the idea that such a transaction with an individual creditor was in the contemplation of the legislature. There is nothing in the assignment act of 1882 which tends in any way to convert such a provision for a creditor into a general assignment for the benefit of creditors. On the contrary, the distinction is there clearly drawn between the two kinds of instruments in this: that a mortgage or other conveyance to a creditor, whereby such creditor is secured by the debtor, is made void, if the debtor was at the time insolvent, and if the creditor knew of such insolvency, or had reason to believe that it existed, in case the debtor should, within ninety days thereafter, make an assignment for the benefit of creditors.

Before this act was framed, a debtor could make preferences in a general assignment for the benefit of creditors, and could make such preferences by previous dispositions of his estate as he pleased; provided, that it was not done for the purpose of defrauding or delaying other creditors. By this act the law relating to assignments for the benefit of creditors was changed, so that preferences in such instruments were made to render such assignment "absolutely null and void, and of no effect whatever." As to the other instruments made to secure creditors, whereby preference was given to such creditors, they are not at all affected by the act unless within ninety days they are followed by a general assignment for the benefit of creditors; but the law remains as to the preferences by such instruments just as it did before. It is well that the construction contended for by the plaintiffs cannot be sustained, as its consequences would be far-reaching, and probably disastrous to the mercantile classes. The motion must prevail.

It is ordered, that the injunction order granted herein, bearing date January 12, 1884, be vacated and set aside, and that the plaintiffs pay the defendants their costs and disbursements on this motion. Also ordered, that the many papers and all the affidavits read at the hearing be filed with the clerk.

The defendants, Bollmann Brothers, appealed from Judge Cothran's decree on the following grounds:

1st. That his honor erred in holding, as a conclusion of fact, that the mortgage in question was executed with intent to prefer Bollmann Brothers, to the exclusion of Richard's other creditors, and that Richard executed it and Bollmann Brothers received it with intent to hinder, delay, and defraud the other creditors of Richard, and that it covered all of Richard's property of value and applicable to the payment of his debts.

2d. That his honor erred in holding, as a conclusion of law, that the mortgage in question is in violation of section 2014 of the General Statutes, and void.

3d. That his honor erred in holding, as a conclusion of law, that the mortgage in question was executed by G. Richard and received by Bollmann Brothers, with intent to hinder, delay, and defeat the creditors of G. Richard, and is fraudulent and void as against plaintiffs and such creditors as have joined them in their actions.

4th. That his honor erred in declining to hold that the order of Judge Kershaw dissolving the injunction in the case of *Magovern & Co.* v. *Richard et al.*, was *res judicata* as to all questions between the parties decided by that order, and such questions could not be reviewed by him.

5th. That his honor erred in holding that the transaction between Richard and Bollmann Brothers involving the execution of the mortgage was fraudulent, and that the mortgage was void, even as to the actual advances made under it.

6th. That his honor erred in holding that the mortgage in question was a mere device to evade the statute and prefer Bollmann Brothers by a mortgage, as he could not do by direct assignment, and to defeat, delay, and defraud the other creditors of Richard.

Plaintiffs in the case first stated then gave the following notice of appeal:

That it was error in his honor, Judge Kershaw, to dissolve the injunctions made in this cause by Judge Hudson, upon the ground that a mortgage by an insolvent debtor can never be an assignment for the benefit of creditors within the purview of the 72d chapter of the General Statutes.

*Messrs. T. Moultrie Mordecai, Boyd & Nettles,* and *B. H. Rutledge,* for Bollmann Brothers.

*Messrs. G. W. Dargan, E. K. Dargan,* and *C. S. Nettles,* contra.

September 20, 1887.   The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON.   These two cases were heard together below and also in this court, but they have no necessary connection with each other, nor are they governed by the same principles; therefore, though embraced in the same opinion, they have been considered and determined separately, as will appear below.   The object of the action in each case was to annul and set aside a chattel mortgage executed in 1883 by the defendant, Richard, to his co-defendant, Bollmann Brothers.   In the first named case the ground of the assault was that the alleged mortgage was really intended as an assignment, in which a preference was given to the said Bollmann Brothers, and therefore void under the assignment act, general statutes; that of the second, was that said mortgage was void under the statute of Elizabeth.   The plaintiffs in the first action had not reduced their claim to judgment, but those in the second had.

In the first action his honor, Judge Hudson, on *ex parte* application of plaintiffs, granted a preliminary injunction restraining Bollmann Brothers from enforcing their mortgage.   This injunction, on proper notice of motion thereto, was dissolved by his honor, Judge Kershaw, at his chambers, his honor holding that the mortgage in question could in no sense be regarded as an assignment with preference.   From this order there was no appeal.   But on the hearing of the case afterwards by Judge Cothran, the ground upon which Judge Kershaw had dissolved the injunction was reversed, and the mortgage was held an assignment and executed in violation of the spirit, at least, of the assignment act, and therefore null and void.   The same holding was held by his honor, Judge Cothran, in the second case, and also that the said mortgage was fraudulent and void as intended to delay, defeat, and defraud the creditors of the said Richard.

From the decree rendered below, embracing the two cases, the appeal is now before us, in which error is alleged to said decree in the first case: 1st. Because his honor, Judge Cothran, reviewed and reversed the ruling of Judge Kershaw. And, 2d. That if Judge Cothran had jurisdiction of the matter ruled by Judge Kershaw, that then he erred in holding the mortgage an assignment with preference, and therefore void under the assignment act. In the second case—that he erred in holding the mortgage void, whether his said holding was based on the idea that the mortgage was an assignment, or in fraud, or a contrivance to defeat, delay, &c., creditors, and therefore void under the statute of Elizabeth.

Now, applying our remarks to the first above named case, we are compelled to say that we do not find in the testimony anything more than an ordinary mortgage executed by a debtor—insolvent, no doubt, at the time—covering a large portion of his property in favor of one creditor over other creditors; this done in the exercise of a right which has been recognised almost time out of mind in this State and elsewhere in numerous cases still standing unoverruled, and which, until they are overruled, are authority upon this court. See numerous cases in our own reports. The recent cases of *Wilks* v. *Walker*[1] and *Austin, Nichols & Co.* v. *Morris*[2] have not touched this principle. Nor did the assignment act intend to touch it; or, if such was the intention, it does not appear in the language used in said act. That act was intended to meet an evil, which, at the time of its passage, was in existence, and was growing in the commercial world, to wit: the practice of making general assignments ostensibly for the benefit of all creditors, but yet preferring in said assignment some creditors to others; and the purpose of the act was to cut up this practice root and branch, which it was hoped could be accomplished by simply declaring that the preference given should in itself, whether fraudulent or not, avoid the instrument or assignment. There was not a word or an intimation that the long established right of securing one creditor over others by mortgage, judgment, or sale of property was stricken at. On the contrary, in the second section of that act, as Judge

---

[1] 22 S. C., 108.      [2] 23 S. C., 393.

Kershaw very forcibly says in his decree dissolving the injunction: "The distinction is there clearly drawn between the two kinds of instruments in this, that a mortgage or other conveyance to a creditor, whereby such creditor is secured by the debtor, is made void, if the debtor was at the time insolvent, and if the creditor knew of such insolvency, in case the debtor should, within ninety days thereafter, make an assignment for the benefit of creditors." There the act itself distinctly recognized the difference between a mortgage to secure a creditor, even by an insolvent debtor, and known to be so by the creditor himself, and an assignment for the benefit of creditors generally; and it impliedly, at least, sustains a mortgage given under such circumstances, provided it is executed longer than ninety days before the assignment.

As the law now stands under our decided cases, these two things, to wit: the right of a debtor to give a preference by mortgage, judgment, or other paper, to one creditor over others, and his inability to do so in an assignment for creditors, are separate and distinct matters, and they cannot be confounded or intermingled. Each case must stand upon its own facts. If these show simply a mortgage, and that it was executed with no general assignment following it within ninety days, although the debtor may be insolvent at the time with the knowledge of the creditor, it must stand, because the creditor, under long established law, has obtained vested rights thereby which no court can divest, except in the exercise of legislative functions, which no court in this State is authorized to do. If, on the contrary, the facts show a preference given in an assignment for the benefit of creditors, or the execution of a mortgage within ninety days before such an assignment by an insolvent debtor, and known to be so by the mortgagee, then it is obnoxious to the act, and will be declared void. The case of *Wilks* v. *Walker*, *supra*, does not conflict with these principles, because the court there held that the defendant had admitted by his demurrer the charges in the complaint that an assignment had been made with a preference, and in that case provision was made in the papers in contest for the payment of another creditor besides the mortgagee or vendee. But especially the court relied on the admission by the defendant of

the charge that he had executed an assignment in violation of the assignment act.

In the case now before the court there seems to be no doubt that Bollmann Brothers held a valid claim on Richard. They had a right to sue and obtain judgment, or they had a right to procure a mortgage or any other security. The law encourages vigilance, and we know of no legal obligation resting upon a creditor to notify the world, that he intends to make, or is making, an effort to secure his debt. It is true, it might be high morality and distinguished abstract fairness and justice for a creditor to give up this right and refuse to take any security for his debt, unless all creditors are brought within the same protection ; but the law does not require this, and such unselfish and disinterested benevolence and fairness has seldom been practised. We concur with Judge Kershaw, that there was nothing in the facts of this case to avoid Bollmann Brothers' mortgage under the assignment act. Inasmuch as we have thus concurred in the general result of Judge Kershaw's holding, it is not necessary to discuss the question whether his decree dissolving the injunction was reviewable by Judge Cothran.

This brings us to the second case. It does not clearly appear whether his honor annulled the mortgage in this case as in violation of the assignment act, or as void under the statute of frauds. If the former, then what we have said above applies. And, besides, such an issue was not raised in the pleadings in this case, and a decree based upon that ground would be beyond the issue.

Was the mortgage void under the statute of frauds ? To be void under said statute, or at common law, it should be made to appear that it was either without consideration, or that it was *mala fide*, one or both. In other words, for a paper of the kind to be invulnerable, it should be based upon a valuable consideration and be a *bona fide* transaction. Now, there can hardly be a doubt, in fact, it is not denied, that Bollmann Brothers held a large claim on Richard, which this mortgage was intended to secure, so that one of the elements necessary to sustain it is present. Was it *bona fide ?* or was it *mala fide* as to both parties to the instrument ? because this is necessary to avoid it. What is *mala fides ?* It must be an intent, not simply to assert

one's own rights, but, in addition thereto, to defeat the rights of another, participated in, as we have said, by both parties to the instrument. A good illustration is found in the old case of *Lowry* v. *Pinson*,[1] where Pinson bought a tract of land paying *full value* for it, but one of the objects of the purchase was to enable his vendor to leave the country so as to escape the consequences of an action for damages against him by Miss Lowry for breach of marriage contract. Here Pinson was exercising a right of purchase, a right which belongs to every one. He paid full value for the land, but yet one object he had in buying it was to enable his vendor to defeat the action of Miss Lowry. The court very properly held that here was *mala fides*.

Now, is there any testimony in the case before us that Bollmann Brothers, while asserting their right to obtain a security for their claim on Richard, intended also to enable Richard to defeat, delay, and hinder his other creditors? The mortgage may have that effect, to the extent of the property mortgaged, but was this one of the intended effects? Did Bollmann Brothers conspire with Richard to use their claim for the fraudulent purpose of defeating the other creditors? Was there any secret trust, benefit, or advantage secured to Richard in consideration of the mortgage? We see nothing in the case but that Richard was insolvent, and that he embraced in his mortgage his entire visible goods and chattels in his store, and that it was the understanding that the mortgage was not to be recorded for forty days. This latter fact, though really of no harm to the creditors, is the only circumstance that has an appearance of the want of frankness and open, fair dealing. But this, in itself, cannot be held sufficient evidence of a fraudulent intent. Bollmann Brothers had the right to withhold their mortgage from the record, and we do not see that the creditors could be prejudiced in any way thereby, and consequently there could have been no such intent.

In the discussion of this case we have not been unmindful of the fact that the findings of a Circuit Judge below on questions of fact will not be disturbed if they are sustained by the manifest weight of the testimony.

---

[1] 2 Bailey, 324; 23 A. D., 140.

It is the judgment of this court, that the judgment of the Circuit Court be reversed.

MR. JUSTICE McIVER concurred.

MR. JUSTICE McGOWAN dissented.