### 8677

#### CROSBY v. WIGGINS LAND CO.

FRAUD—REAL PROPERTY.—Where remaindermen, ignorant of their rights, and without consideration, at the instance of reputable attorneys, without time for investigation or reflection, on representation that the deeds were mere forms and carried out their father's wishes in the land conveyed by him, execute deeds without warranty for their interest in the land, and where the intention of the purchaser is to obtain a valuable tract of land and timber for half its value, the deeds will be set aside as a fraud on grantors and a mistake in fact.

Before PRINCE, J., Colleton, January, 1913.    Affirmed.

Action by M. J. Crosby and others against Wiggins Land Company and others.    Defendants appeal.

*Messrs. Padgett, Lemacks & Moorer* and *E. L. Fishburne,* for appellants.    *Messrs. Padgett, Lemacks & Moorer* cite: *One signing a deed conveying an interest he knows he has in property, is bound by his act:* 63 At. 998; 53 W. Va. 515; 61 *Id.* 477; 95 S. W. 451; 56 Minn. 534; 104 Mich. 180; 62 Pac. 1067.    *Grantor is bound to know what he is doing when he signs a deed:* 78 S. C. 423; 77 S. C. 542; 20 S. C. 317; 9 S. C. 35; 6 John's Ch. R. 168; 58 S. C. 395.

*Mr. Fishburne* cites: *Where purchaser pays full value fee simple title should be made:* 92 S. C. 305; 58 S. C. 394.

*No trust or confidence relation:* 37 Am. St. R. 270; 12
*Id.* 126.

Messrs. *Howell & Gruber,* contra, cite: *Parties relied on
statements of attorneys:* 50 S. C. 401; 82 S. C. 173; 77 S. C.
542. *Parties should not assume inconsistent positions:*
Bigelow on Est. 601; 8 Rich. L. 119. *When rule as to fail-
ure to investigate false representations applies:* 14 Ency. 121.

October 28, 1913. The opinion of the Court was deliv-
ered by

MR. JUSTICE FRASER. Edward O'Quin, now dead, owned
a plantation in Colleton county, known as "The Carn Farm."
In 1888 he conveyed it to Mrs. "Mary A. Padgett and her
children." On the record the following entry appears: "On
5 & 9 lines the words Heirs erased before signing." The
grantees treated the deed as a conveyance in fee and through
several conveyances, the timber was conveyed to The Thayer
Lumber Company. Subsequent to that conveyance, the
land was conveyed to Mr. Geo. Fletcher. Mr. Fletcher,
finding the land unprofitable, tried to sell the land to Mr. R.
G. Wiggins. Mr. Wiggins had the title examined for this
sale and the investigation showed that Mr. Fletcher had only
an estate for the life of the children of Mrs. Padgett. Mr.
Wiggins told Mr. Fletcher that if he would get a quitclaim
deed from the heirs of Edward O'Quin he would buy the
land, as that would give him title to the land and the timber.
Mr. Fletcher told Mr. Wiggins that he did not claim the
timber, but he would try to get the quitclaims and that Mr.
Wiggins could make out of it anything he could.

Mr. Fletcher conveyed the land to the defendant, Wiggins
Lumber Company, for which Mr. Wiggins was the agent,
and the heirs of O'Quin conveyed the reversion to J. R.
Paschall, at the suggestion of Mr. Wiggins, and Paschall
conveyed to Wiggins. Mr. Fletcher's price was based upon

his idea of the value of the land. The inducement to Mr. Wiggins, to buy, was that he would thereby get the timber as well as the land.

The Thayer Lumber Company paid for the timber twenty-five hundred dollars. Mr. Fletcher paid twenty-two hundred and fifty dollars for the land, and ninety-five dollars to attorneys for the titles and securing the quitclaims, and sold it to Wiggins Lumber Company for twenty-five hundred dollars. It is estimated that on account of increased values of land and timber the timber is now worth about four thousand dollars and the land about three thousand dollars.

Mr. Wiggins had the quitclaim deeds prepared by his attorney and the deeds were carried to Mr. W. J. Fishburne, of the then firm of Fishburne & Padgett, in order that he might have them executed. Mr. Fishburne was about to go away on a trip and turned over the papers to his copartner, Mr. Padgett, in order that he might procure the execution of them. Seven of the heirs of Edward O'Quin executed quit-claim deeds. There was no money paid for those deeds to the heirs of Edward O'Quin.

This action is brought by the heirs of Edward O'Quin to set aside these deeds, on account of mistake of fact and fraud. The Circuit decree was in favor of plaintiff. From this Mr. Wiggins appealed on the ground that the preponderance of the evidence was against the finding.

There is conflict of testimony as to what Mr. Fishburne told Mr. Padgett, and what Mr. Padgett told the heirs of Edward O'Quin. Mr. Fishburne says he told Mr. Padgett of the defect and that the deeds were a mere matter of form. Mr. Padgett testified that he has no recollection of this and is sure that he did not so understand Mr. Fishburne, but that he merely told him that the deed was to enable Mr. Fletcher to sell his land and that the deeds would back up what their father had done. It is a pleasure to state, that no fraud is alleged against Mr. Fishburne or his partner, Mr. H. R. Padgett. Memory is unreliable and a witness may, with

perfect honesty, make a statement that is not in accordance with the facts. Mr. D. L. Smith, one of the witnesses to the deed of Mrs. Mary Crosby (one of the O'Quin heirs), said that Mr. Padgett told Mrs. Crosby that the deed was "a mere form to cure the defect." The grantors state that Mr. Padgett told them: "There is nothing in it for you or against you." Subsequently, Mr. Fishburne said he regarded the deeds as merely formal. It is entirely probable that Mr. Fishburne, who knew what the defect was, and who considered the absence of the word "heirs" as purely formal, should have told his partner and the partner should have told the O'Quins, and then, the whole subject being new to him, he has forgotten.

It will be observed that the theory of the appellant and his attorneys still is that these deeds are merely formal. Are they merely formal? It appears that they are not. Appellant speaks of the omission of the word "heirs." The word was *not omitted*. It was stricken out, and so important was it that attention was called to it before the deed was executed. It certainly was not inadvertent. The O'Quins may not have known it, and did not, but they had a substantial right, which was a fee in reversion, after the expiration of the life estates. The whole estate is estimated at about seven thousand dollars and advancing in value. What Mr. Fletcher needed, was a conveyance of this interest. A life estate is roughly estimated at one-half of the whole. The O'Quins were asked to convey about thirty-five hundred dollars' worth of property for nothing, and to make the conveyance without an hour for reflection or investigation. The deeds are spoken of as quitclaims. In one sense they are, in that there is no warranty clause.

Rapalge & Lawrence Law Dictionary: "Quitclaim is a release or acquitting of a man for an action that he (the releasor) hath or might have against him." Popularly it may be to taken to be the relinquishment of an uncertain claim. The usual words of a quitclaim, "remise, release

and forever quitclaim," are not in the deeds. They are straight conveyances of all my right, title and interest in Carn Farm. Besides that, the consideration for which these deeds were executed did not exist. There was no money consideration. Two other considerations are set up: 1. To enable their neighbor to get what he thought he had bought. 2. To sustain their father's deed.

When they found that the deeds did not and were not intended to sustain the deed of their father, but really to defeat it as to the most valuable portion, they have brought this action to undo what they did under a mistake. The statement of Jacob O'Quin does not have the effect the appellant claims. Jacob O'Quin said in a conversation with his neighbor, "If it wasn't for one party trying to beat the other, that he, Jacob, would not have anything to do with it." It was a high and noble purpose to convey away rights to sustain the supposed deed of their father, but quite another to do what would deprive a *bona fide* purchaser of his title under that deed. There is also quite a difference between making a conveyance to enable a neighbor to get what he thought he had purchased, and making a conveyance to enable a stranger to get what he did not purchase.

Was there fraud? There was.

Rapalge & Lawrence Law Dictionary: "Fraud is used in many senses, but the point common to all of them is pecuniary advantage gained by unfair means."

The pecuniary advantage here was that Mr. Wiggins would get the timber for which he was not to pay.

The unfair means was to secure deeds to property of great value, under the statement that the deeds were merely a formal proceeding to cure an omission. It makes no difference that the attorneys were honest and not conscious of the advantage. Indeed, the more honest and reputable they were, the more likely were they to secure the advantage. As a matter of law, the principal is responsible for the acts of the agent, and the agent is charged with the knowledge of the

principal. Combining, therefore, the act of the agent with the knowledge of the principal, can it be doubted that it was unfair to send to the O'Quins, people of little education, at the hands of highly honorable gentlemen, deeds already prepared for immediate execution, and state that the result desired was to help their neighbor and sustain their father? We think not, and find that there was fraud. It is said, however, that this suit is really in the interest of the Thayer people and that by reason of a contract between the Thayer people and the heirs of O'Quin, the Thayers will get the land. It is said that where equities are equal, the Courts will not interfere. That if these deeds are affirmed the Thayers will lose the timber for which they have paid, but if they are cancelled, Mr. Wiggins will practically lose the land for which he has paid. The contract between the Thayers and the O'Quins is not before the Court for enforcement, and we can make no finding as to its validity. Suppose, however, that that contract is binding, the equities of the parties are not equal. Mr. Wiggins would not undertake the purchase until he found that by this plan he could get the timber for which he was not to pay, and thereby defeat the right of the Thayers to the timber. The Thayers did not move in the matter until they found that their timber was in danger. The purpose to defeat another is fraud. See *Lowry* v. *Pinson,* 2 Bailey 324; *Magovern* v. *Richards,* 27 S. C. 286-7, 3 S. E. 340; *Gerald* v. *Gerald,* 28 S. C. 444, 6 S. E. 290. The purpose to protect yourself is not. Whether the means by which they seek to protect is or is not fraudulent, is not before this Court.

There was no abuse of discretion in requiring appellant to pay the costs and disbursements of this suit.

The judgment appealed from is affirmed.

MESSRS. JUSTICES HYDRICK *and* WATTS *concur in the result.*