BRYCE v. CAYCE.

1. APPEAL.—Where ground of objection to evidence on trial is not specified, this Court cannot consider if ruling is erroneous.
2. CHARGE—ADVERSE POSSESSION.—If the Judge instruct the jury as to what things in his judgment would bring home notice of adverse claim to true owner, he would charge on the facts, but it is proper for him to leave that to the jury.
3. IBID.—Where there is no evidence to show a paper title in the plaintiff holding back to the State, it is not the expression of an opinion to so charge the jury.
4. TITLE—COMMON SOURCE—ESTOPPEL.—Where there is no question of trust under the pleadings, even if the parties claim from a common source, this does not prevent the defendant from showing he has a better title from another source.
5. CHARGE that there is no evidence to show that plaintiff acquired title by possession of a previous owner before a certain date, is not a comment on the facts, where there is no question as to such holding.
6. ISSUES—APPEAL.—If Judge err in stating issues, it is the duty of counsel to call his attention to it, if it is to be made the basis of an exception for appeal.
7. CHARGE.—A statement to the jury of the contention of a party, is not a charge on the facts.
8. ADVERSE POSSESSION is noticed to the holder of the true title by acts of hostile possession, and to set up such title it is not required that the holder prove actual verbal notice of intent to hold adversely, or actual knowledge in, or sight of acts of such holding by the true owner, even where the original holding began in subordination to the true title; and this doctrine applies in all cases where there is no fiduciary or trust relations between the parties.
9. APPEAL—NEW TRIAL.—Where refusal of motion for new trial involves questions of fact, and where there is evidence to sustain the findings, this Court will not interfere.

Before GAGE, J., Lexington, February, 1901. Affirmed.

Action by John Campbell Bryce against R. W. G. Cayce and James Cayce. From judgment for defendants, plaintiff appeals.

*Messrs. Wm. H. Lyles* and *D. W. Robinson,* for appellant,

cite: *Title cannot be shown by general repute:* 48 S. C., 477. *Declarations in favor of one's title are not admissible:* 36 S. C., 598; 48 S. C., 486; 18 S. C., 494. *Execution of a lost paper must be proved before contents:* 14 S. C., 594; 37 S. C., 102. *Possession in privity with plaintiff inures to his benefit:* 50 S. C., 297, 457; 26 S. C., 224; 61 S. C., 288; 18 S. C., 493. *Judge cannot charge effect of evidence:* 61 S. C., 356; 57 S. C., 340; *nor inferences from it:* 47 S. C., 523; 57 S. C., 340; 61 S. C., 563. *Permissive possession cannot ripen into title unless it be shown that such possession terminated, and of this the owner knew:* 35 S. C., 609; 9 Wheat, 288; 6 L. Ed., 92; 1 Ency., 794. *It is against policy of the law to permit one to dispute the title under which he went into possession:* 1 Strob., 2; 50 S. C., 297; 25 S. C., 457; 39 S. C., 368; 15 S. C., 269; 23 S. C., 104. *To ripen title by adverse possession, party must so claim for statutory period:* 16 Ency., 803; 121 N. C., 268; 2 Bail., 605; 23 S. C., 351. *Permission once granted is presumed to continue:* 1 Ency., 2 ed., 794; 9 Mch., 418; 97 Mich., 59; 61 N. W., 814; 99 N. C., 558; 106 N. C., 553. *Possession by child or widow:* 75 N. C., 361; 15 S. C., 182; 24 S. C., 33; 21 S. C., 123; 23 S. C., 231; Code, 107; 26 N. C., 126; 97 N. C., 100; 86 N. C., 258; 75 N. C., 361; 21 S. C., 463. *What acts are necessary to enable party in possession in privy with rightful owner to set statute in operation by adverse possession:* 4 How., 289; 3 Pet., 51; 1 Ency., 2 ed., 798; 51 S. C., 533; 10 Rich. Eq., 228. *Defendant is estopped here from claiming adversely to rightful owner:* 17 S. & R., 364. *Plaintiff need not plead it:* 27 S. C., 235; Big. on Est., 532; 126 N. C., 195; 114 N. C., 556; 39 S. E. R., 732. *Party taking any beneficial interest under will is held to ratify every part and to renounce interests inconsistent therewith:* 13 L. R. A., 567; 21 S. C., 463; 25 S. C., 460; 159 Ill., 252; 73 Hun., 114; 77 Pa. St., 167; 78 Ia., 252; 34 Me., 447; 82 Wis., 371; Big. on Estp., 642; Jar. on Wills., 386; 11 Ency., 2 ed., 101-103; 66 Ga., 632; 74 Ga., 530; 82 Wis., 372; 17 At., 206; 53 N. C., 288; 121 N. C., 331; 37 S. C., 531; 7 Cranch., 378. *Trustee*

*cannot claim adversely to ward:* 61 S. C., 505; 43 S. C., 252; 21 S. C., 462; 10 S. C., 368; 52 Neb., 597; 10 Mass., 135; 74 Ga., 530; 45 Ga., 112; 77 Pa. St., 168; 34 Me., 447; 27 Tenn.; 554; 91 Ga., 372; 53 S. C., 29; 1 N. & McC., 373; 22 S. C., 452; 25 S. C., 521; 28 L. R. A., 620; 37 S. E. R., 572; 109 N. C., 460; 35 S. C., 529; 10 Rich. Eq., 228; 2 McC. Eq., 149. *Defendant is estopped to claim under other deed than plaintiff's by his silence:* 12 S. C., 354; 59 Pa., 214; 16 L. R. A., 815; 22 Wis., 52; 18 S. C., 531; 23 S. C., 104. *Stat. of limitations does not run until knowledge of breach of trust:* 51 S. C., 532; 10 Rich. Eq., 228.

*Messrs. P. H. Nelson* and *J. S. Muller,* contra, cite: *Declaration in favor of one's title are competent when accompanied by acts of possession:* 1 Green. Ev., pages 108, 109; 4 McC., 150; 16 S. C., 142; 1 Ency., 2 ed., 891, 796; 53 S. C., 71. *Objection is too late after question answered:* 53 S. C., 360. *Trial Judge may charge jury there is no evidence on a given point:* 26 S. C., 168; 14 S. C., 510; 5 S. C., 70; 57 S. C., 293. *Question of common source is one for jury:* 22 S. C., 137; 26 S. C., 168. *Order refusing new trial will not be reversed except where (1) it is based on erroneous view of the law, or (2) no evidence to support verdict:* 52 S. C., 382; 57 S. C., 289; 59 S. C., 194, 433; 54 S. C., 95.

February 25, 1902. The opinion of the Court was delivered by

MR. JUSTICE GARY. This action was commenced on the 8th August, 1893, for the recovery of a tract of land, and resulted in a verdict for the defendants. As the questions raised by the exceptions are dependent, to a great extent, on the issues in the case, we desire to call special attention to the pleadings. The complaint is in the usual form, and alleges that the plaintiff is the owner and entitled to the immediate possession of the land therein described; that the defendants are in possession thereof and wrongfully withhold the same from the plaintiff. The defendants, in their answer to the

complaint, deny each and every allegation thereof and set up the following defenses: ·

"For a second defense: I. Allege that neither the plaintiff, nor his predecessors, ancestors or grantors, has been in possession or has had any right, title or interest in and to the premises at issue under the pretended title by virtue of which he claims to be the owner thereof for twenty years and more next preceding the commencement of said action, but that these defendants, their predecessors, ancestors and grantors, have for the same period of time been in undisturbed, peaceable, continuous and hostile possession of the same against the pretended title of said plaintiff, those under whom he claims and all the world.

"II. And these defendants further make answer, that they, their ancestors, predecessors and grantors, have been for the ten years next preceding the commencement of this action in the continuous, uninterrupted, hostile and adverse · possession of the land in question against the pretended title of the plaintiff, his predecessors, grantors and ancestors, as well as all other persons under whom he claims title therein."

The plaintiff relied upon the following sources from which he claimed to have derived title: (1) From a judgment and sale under execution issued thereon against James Cayce, Sr., and a deed of conveyance made upon such sale, dated 4th October, 1847, by the sheriff of Lexington District to John Bryce; deed recorded 16th November, 1847, and again in 1901. (2) The codicil to the will of John Bryce, dated 28th July, 1853, probated and executor qualified December, 1855. The codicil contains the following provision: "The plantation and mill in Lexington District, near what was formerly West Granby, formerly the property of James Cayce, but sold by Isaac Vansant, sheriff of Lexington District, at the suit of A. G. Summer and B. R. Carroll, on the first Monday, 4th October, 1847, and bought in by me, having also an execution against Cayce for a debt of $1,900, which I had to pay as his indorser to the two banks in Columbia, and for which I have paid first and last its full value,

for I had to take up a note of $770 to P. & R. Bryce, besides; this plantation I give, devise and bequeath to my grand-son, John Campbell Bryce, and to his heirs, etc.; should he die without issue, then to go to his father and to his children precisely as the rest of my estate. Nevertheless, it is my wish and desire that Mrs. Cayce be permitted to occupy the house and premises as she has hitherto done since the death of Mr. Cayce, and to plant, if she desires to do so, one-third of the cleared land, and to receive one-fourth of the toll of all the corn ground at the mill, as long as she determines to prefer this to a fair equivalent in money for her dower. I know my son will at all times be willing to make a fair and liberal arrangement with her, and this is my desire and wish.". (3) The following agreement, dated 27 February, 1856, recorded 13 March, 1856, and again in 1901, to wit: "South Carolina, Richland District. Know all men by these presents, That I, Elizabeth R. Cayce, widow of James Cayce, in consideration of being permitted by the executor of the late John Bryce and by his devisee, John Campbell Bryce, to occupy during my life the houses and the yards and gardens thereto attached in the premises below mentioned, and in consideration of the privilege of planting during my life sixty acres of average quality of the cleared land upon the said tract, and also of the sum of five hundred dollars to me secured to be paid by Campbell R. Bryce, executor of the last will and testament of John Bryce, deceased, have granted, bargained and sold and released, and by these presents do grant, bargain, sell, remise and release unto the said John Campbell Bryce, the grand-son and devisee of the said John Bryce, all my interests and estate of dower in and to that tract of land situate in Lexington District, in the State aforesaid, whereon I now live, formerly the property of my late husband, James Cayce, and purchased at sheriff's sale by the late John Bryce, and conveyed to him by Sheriff Vansant on the 4th October, 1847, to wit: a tract of land containing about five hundred acres, near old Granby, on the State road, and on the south side of the Congaree River, and bounded

by lands of Henry Arthur, Rachel Hayne or Alexander R. Taylor and others now or formerly. To have and to hold all and singular my right, title and estate of dower or of any other kind in and to the said premises to him, the said John Campbell Bryce, his heirs and assigns forever. And I hereby covenant and agree to and with the said John Campbell Bryce to hold the said lands for the benefit of himself and his heirs and assigns during the period of my life, and subject to my use thereof as herein is first above recited, releasing my right of dower and other interests I may have in said lands, and disclaiming to hold the said lands or any part thereof or any interest therein by adverse possession. In witness whereof, I have hereunto set my hand and seal this twenty-seventh day of February, Anno Domini 1856. Elizabeth Rea Cayce (seal). Signed, sealed and delivered in the presence of Robert Bryce, Jno. F. Speck." (4) The will of Elizabeth R. Cayce (dated 14th April, 1874, probated 7th August, 1876, and under which R. W. G. Cayce duly qualified as executor) as follows: * * * "Second. Inasmuch as there is now pending in the Courts of this State a question of ownership of a certain tract of land on Congaree River, in Lexington County, about one and a half miles below the Columbia bridge, containig five hundred acres of land, more or less, bounded on the north by Arthur's, south by Taylor's, west by Arthur's land and east by the Congaree River. It is my will and desire, if the Courts should decide the aforesaid question of ownership in my favor, that the said tract of land be equally divided between my three children, James Cayce, Jane Stingley, widow of the late James Stingley, of the State of Mississippi, and R. W. G. Cayce, to them and their heirs forever, share and share alike. * * * Lastly: I hereby nominate, constitute and appoint my sons, James Cayce and R. W. G. Cayce, executors of this my last will and testament." * * * The defendant, R. W. G. Cayce, claimed title from R. W. Gibbes by adverse possession and under certain judicial proceedings described in the record.

"The plaintiff made a motion for a new trial on the following grounds:

"1. It is respectfully suggested that there is no evidence in the case tending to prove that notice or knowledge of the adverse character of defendant's possession upon the lands in controversy was brought home to the knowledge of the plaintiff as much as ten years prior to the commencement of the action.

"2. It is respectfully suggested that, according to the undisputed record and admitted evidence, the defendant is estopped to claim under what is termed in the case the Gibbes deed, or to claim title to the land under any other title and possession save and except through, from and under his mother, and charged with the duties and trusts with which she was charged, his possession did not and could not become adverse to the plaintiff until he brought home to plaintiff notice or knowledge of his disclaimer of said trust, and of his adverse holding; and that it was erroneous to submit to the jury upon the evidence the question as to whether the defendant had held possession of said land adversely either under the Gibbes deed or otherwise, sufficiently long to ripen his title prior to the commencement of the action.

"3. It appearing by the undisputed testimony that the defendant, R. W. Cayce, was a child of tender years, residing upon the premises in question with his mother, who was a widow at the time of the execution of the deed whereby she covenanted to hold the premises for the benefit of the plaintiff, John Campbell Bryce, and that he continued to live on said premises with his mother until her death, and by her will he was appointed executor and qualified as such, and that he became by substitution as such executor a party to the suit to which he had been made defendant, it is respectfully submitted that his possession could not have become adverse to the right of John Campbell Bryce, for whom his mother held under said deed, until he had brought home to said John Campbell Bryce knowledge of the adverse character of his holding, and that there is no evidence that such knowledge

had ever been brought home to said John Campbell Bryce."

In disposing of the motion, his Honor signed the following order:

"This is a motion for a new trial. The motion was not argued until 13th May, at Columbia. The subject of the action was a parcel of land at Cayce. The verdict was for the defendant. The motion is made on three grounds, briefly stated as follows, to wit: 1st. There was no evidence tending to prove plaintiff had notice of defendant's adverse holding. 2d. The defendant was estopped to set up any title except that under his mother, until he carried home to plaintiff a disclaimer of title under his mother. 3d. The defendant being in under his mother, first as a child and then as devisee and executor, his possession could not become adverse to plaintiff until notice was carried to plaintiff of the adverse holding by defendant. The second and third grounds embody issues of law in which I concurred at the trial and which are yet sound. The first ground raises a question of fact, to wit: Was there any testimony tending to prove Cayce was in possession in his own right, and did Bryce have notice of that fact? The action was begun 8th August, 1893. The defendant's mother died February, 1875. The defendant has had possession of the land from his mother's death until action brought. The only pertinent inquiry is, what was the character of that possession? If it was unequivocally and notoriously hostile to Bryce, it would confer title. It may be, Cayce knew in his heart that Bryce had a legal paper title which could supplant him, and he may have taken his chances to win by the lapse of ten years adverse holding. It may be and it was the fact, that Cayce went in by permission, but he had the legal right to change his attitude. Did he? The testimony is full that Cayce exercised all the acts common to an owner. In such a case, it is not incumbent on the occupant to tell the owner of the legal title what his acts of dominion mean. If the acts were done, and a reasonable man seeing them ought to have known what they meant, that is occupancy hostile to the

legal owner. But Bryce was there on the land in the early seventies and saw the acts of dominion, and complained about them to Cayce. At the same time, Cayce offered to surrender the premises for $500. That was the assertion of a right, whether well or ill founded. The plaintiff's counsel contend that Bryce was away from Columbia for fifteen years before action brought, and he could not have witnessed Cayce's hostile possession. I am satisfied that Bryce never interested himself about the land until recent years. And the reason of it is he thought his title had been alienated. He executed a mortgage on the land to one Hope in the seventies; he defaulted in payment; action for foreclosure and sale was begun and Bryce accepted service of process. For reason, not necessary to state, the sale was invalid and did not alienate Bryce's title. But I have no doubt but that Bryce thought his title was gone; he abandoned the property, to discover in after years that by a chance slip his paper title was intact. In my judgment, there was ample testimony for the jury to conclude Cayce was in ten years for himself and that Bryce knew it, or that he knew facts, which would have been notice to any reasonable man. The motion for new trial is, therefore, refused."

The appellant's exceptions are as follows:

"1. Because, over the objection of the plaintiff, his Honor, the presiding Judge, allowed the witness, Andrew Crawford, Esq., to testify in reply to the question: 'How did R. W. G. Cayce claim this land, so far as you know?' as follows, to wit: 'I have told you of the acts I know of. For instance, he would run off the pond when he pleased and let people gather fish there; he was working the land, and he was generally looked upon as the owner of the land, recognized as such.' And refused the motion of the plaintiff to strike out so much of said answer as stated that said Cayce was generally looked upon as the owner of said land and recognized as such, the testimony being incompetent, as tending to prove title in said defendant by common reputation, and

tending to prove his possession against the plaintiff under whom he held.

"2. Because, against the objection of the plaintiff, the witness, Andrew Crawford, Esq., was permitted to testify: 'I know he claimed he was not holding for Mrs. Elizabeth Cayce'—the same being shown to be self-serving declarations made by the defendant, R. W. G. Cayce, to the witness, Andrew Crawford, as his attorney.

"3. Because, against the objection of the plaintiff, the witness, Andrew Crawford, Esq., was allowed to testify: 'He was holding it in opposition to Mrs. Cayce, the old lady, and was not claiming that title at all; that was not the title'—the same being self-serving declarations made by the defendant, R. W. G. Cayce, to the witness, Andrew Crawford, Esq., who was his own attorney.

"4. Because, against the objection of the plaintiff, the witness, John N. Long, was allowed, in response to the question: 'Do you know of your own knowledge that he exercised acts of ownership and claimed it?' to testify: 'Yes, sir'—that he could only testify as to what acts were exercised, leaving it for the jury to say whether they were acts of ownership, and it was not competent for him to testify that he claimed it.

"5. Because the witness, R. W. Cayce, against the objection of the plaintiff, was allowed to testify that a certain paper under which he set up the claim was a deed.

"6. Because his Honor modified plaintiff's twelfth request to charge, as follows: 'One who as executor and devisee is in possession of land held by his testatrix under permission of, or contract with, the real owner, cannot by a pretensive sale under judicial proceeding and purchase in his own name at such sale, so change the character of his possession as to give currency to the statute of limitations, until he brings home to the true owner knowledge of such sale and purchase,' by adding the further clause, 'or until he does other things which in the judgment of the jury bring home that notice'— thereby leaving it to the jury to determine what things in

their judgment should bring home notice of adverse claim to the true owner, and because such modification left it to the jury to infer whether knowledge of such claim may not have been brought home to the true owner, although there was no evidence before them of such fact.

"7. Because, upon the request of the defendants, his Honor charged the jury as follows, to wit: 'There is a failure of evidence to show a paper title in the plaintiff, I add, holding back to a grant from the State'—thereby indicating his opinion on the facts of the case to the effect that the evidence which the plaintiff had introduced as to a paper title did not establish the same, and also erring in holding that the paper title proven by the plaintiff was not sufficient to establish a good title in him.

"8. Because his Honor, upon request of the defendant, charged as follows, to wit: 'If the jury believe from the evidence that the defendant claims under the deed from Dr. R. W. Gibbes—if there was such a deed—I add, then there is a failure of evidence to show that plaintiff and defendant claim from a common source, and in that case a good title in plaintiff cannot be shown by tracing his title back to a common source' (I add, but if the Cayce men were in possession under their mother, and the presumption is they were, they could not change that common source by the taking of title from another; they can set up such other title, and must show it to be a better title than plaintiff's);' thereby indicating, first, that a mere claim by the defendant under the alleged deed from Dr. R. W. Gibbes, if there was such a deed, would have the effect of nullifying or destroying plaintiff's testimony as to a common source, so as to make it a failure of evidence to show that plaintiff and defendant claimed from a common source; and, second, by establishing that in case of such a claim, a good title in plaintiff could not be shown by tracing his title back to the common source, and the same being a charge in respect to matters of fact; and thereby indicating, also, that even if the Cayce men were in possession under their mother, and bound by the trust relation to the plaintiff,

still they could set up such other title, and might show it to be a better title than the plaintiff's, without bringing home to plaintiff knowledge thereof.

"9. Because, upon request of defendant, he charged as follows, to wit: 'There is no evidence to show that plaintiff ever acquired a good title by adverse possession, unless the jury believe from the evidence that Elizabeth R. Cayce had adverse possession of the land for not less than ten years, continuously, between February 26th, 1856, the date of her release to John C. Bryce, and the time of her death in 1875'—thereby charging in respect to matters in fact, and also erring in holding that the plaintiff could not rely upon the possession of Elizabeth R. Cayce even prior to the 26th day of February, 1856, the date of her release to John C. Bryce, and, also, erring and indicating that if the said Elizabeth R. Cayce was in possession of said tract of land at the time of her death, and that the defendant was in possession under her, and held the same subsequent to her death, as executor of her will and charged with the trust assumed by her, that such possession would not be the possession of John Campbell Bryce, and could not be relied upon by him.

"10. Because his Honor erred in his statement of what the defense was, as follows: 'The defense sets up what is called the Gibbes deed. You heard the testimony with reference to it. I cannot tell you what the testimony was. They set up the Gibbes deed, not to prove a title under it, because they do not undertake to establish that Gibbes ever had a title; or if he did, his title was good; they set up the Gibbes deed to prove that the Cayce boys were in possession under the Gibbes deed; therefore, not under a common source with Bryce, and, therefore, they say that Bryce has to prove title from the State down, because they do not claim from a common source. I charge you, if the Cayce men do not claim under Elizabeth, and if they went in under the Gibbes deed and claimed under it, then they do not claim under old James Cayce.' The Court, by giving the charge as above quoted, thereby allowed the jury to consider the possession

and the claim of defendant through and under the Gibbes deed; whereas, it is respectfully submitted that there was no proper evidence to be submitted to the jury for its consideration of the alleged Gibbes deed; that the defendant by the admitted and uncontradicted testimony in the action was estopped to set up title or claim under the said Gibbes deed: (1) by reason of his long silence and failure to give notice of his claim under such deed during the lifetime of his mother and after the execution by her of the covenant (as it is termed by the Court) of 1856, and her apparent holding possession under and in subordination to the title of Bryce; (2) by reason of his entire failure to offer any testimony that he or any one for him had ever given any notice to plaintiff of his holding or claiming under such deed; (3) by reason of the fact that defendant probated the will of his mother, qualified as executor thereof and assumed the duties and trusts which were imposed upon his mother in relation to this land, and while so acting as executor was made a party defendant to the action of 'Edward Hope v. Elizabeth Cayce and John C. Bryce,' also bought the mortgage in suit in said action, and thereafter by consent decree, as set forth therein, caused the land to be sold and bought in his name and the name of James Cayce, but in law charged with the duties and trusts devolving upon said defendant, R. W. G. Cayce, as executor of his mother and as trustee for plaintiff.

"11. Because his Honor charged the jury as follows, to wit: 'The defendants plant themselves upon the land and say, "we have been here ten years, we have been here claiming this land for ourselves and for nobody else, and all the world had notice of it and John Bryce had notice of it," thereby charging in respect to matters of fact and directing the jury as to what inference they were to draw from such facts.

"12. Because his Honor charged the jury as follows, to wit: 'I charge you, if a man in possession of land uses it as his own, claims it and works it as his own, denies everybody else's title to it and especially denies to his face the title, that he is the real owner, and if he holds ten years after that,

that gives him a good title'—thereby indicating that although the defendant might have held the possession as trustee for the plaintiff under the deed or covenant of 1856 and his qualification as executor of and under his mother's will, that he still was using it as his own, claiming it and working it as his own, and denied everybody else's title to it—although he did not deny plaintiff's title to his face and held it ten years, that would give him good title.

"13. Because he charged the jury as follows, to wit: 'I charge you, if ten years before that—if for ten years or more the Cayces lived upon that land as their own and used it as their own continuously and adversely for ten years—and if, after notifying John Bryce of that fact, or if they did things or said things from which he was bound to take notice how they held it, then the statute of limitations started to run'— thereby leaving to the jury to judge as to what things said or done by the Cayces, and to whom said or done, would be sufficient to make the plaintiff be bound to take notice how they held it, and also indicating that they might hold the said plaintiff bound to take notice of the character of defendant's claim, although no actual disclaimer of their holding for his benefit was brought home to his knowledge.

"14. Because his Honor, on the motion for a new trial, should have held that there was no evidence in the case tending to prove that notice or knowledge of the adverse character of defendant's possession of the land in controversy was brought home to the knowledge of the plaintiff as much as ten years prior to the commencement of the action, and should have held that, under the circumstances of the case, it was necessary to establish such notice or knowledge on the part of the plaintiff before the statute of limitations could commence to run, and should have granted the motion for a new trial.

"15. Because, upon the motion for a new trial, his Honor should have held that the defendant was estopped to claim under, what is termed in the case, the Gibbes deed, or to claim title in the land under any other title or possession, and

;save' and ;except through; from and under his mother, and
;that' he was charged 'with the duties and trusts 'with which
(she was: charged,' and that' his possession did not become
'adverse to the plaintiff until he brought home to the plaintiff
hrotice or knowledge of his disclaimer of said trust and of his
·adverse holding, and should have granted the motion for a
new trial.

    "16. Because; upon the motion for a new trial, his Honor
should have held that it appeared by the undisputed testi-
mony that the defendant, R. W. G. Cayce, was a child of
tender years, residing upon the premises in question with his
mother, who was a widow, at the time of the execution of
the deed whereby she covenanted to hold the premises for
the benefit of the plaintiff, John Campbell Bryce, and that he
continued to live on said premises with his mother until her
death; and that by her will he was appointed executor and
qualified as such; and that he became by substitution as such
executor a party to the suit to which he had been made de-
fendant; his Honor should have held that the possession of
the defendant could not become adverse to the right of
John Campbell Bryce, for whom his mother held under said
deed, until he had brought home to said John Campbell
Bryce knowledge of the adverse character of his holding;
and there being no evidence that such knowledge had ever
been brought home to said John Campbell Bryce, his Honor
should have granted the motion for a new trial.

    "17. Because, in his order refusing plaintiff's motion for
a new trial, his Honor held that if the possession of the de-
fendant, R. W. G. Cayce, was unequivocally and notoriously
hostile to Bryce, it would confer title upon him, although he
might have originally held under the title of John Campbell
Bryce, and although the notice of such hostile holding was
not actually brought home to the knowledge of John Camp-
bell Bryce.

    "18. Because, in his order refusing plaintiff's motion for
a new trial, his Honor held: 'It may be and it was the fact
that Cayce went in by permission, but he had the legal right

to change his attitude. Did he? The testimony is full that Cayce exercised all the acts common to an owner. In such a case it is not incumbent on the occupant to tell the owner of the legal title what his acts of dominion mean'—thereby erring in not granting the motion for a new trial.

"19. Because, in his order refusing the motion for a new trial, his Honor held: 'If the acts were done, and a reasonable man seeing them ought to have known what they meant, that is occupancy hostile to the legal owner'—although there was no evidence tending to show that Bryce ever saw any of the acts of the defendant, Cayce, after the death of his mother.

"20. Because his Honor, in his order refusing the motion for a new trial, held: 'But Bryce was there on the land in the early seventies and saw the acts of dominion, and complained about them to Cayce. At the same time, Cayce offered to surrender the premises for $500. That was the assertion of a right whether well or ill founded'—when it is respectfully submitted that the testimony shows that at the time referred to, the mother of the defendant, R. W. G. Cayce, was still living, and entitled under the deed of 1856 to retain the possession thereof, and that Cayce's offer to surrender the possession was an offer to surrender the right held under that deed and not an assertion of an adverse right, and his Honor should have held that there was no assertion of an adverse right, and should have granted the motion for a new trial.

"21. Because, in his order refusing the motion for a new trial, his Honor held: 'In my judgment, there was ample testimony to conclude Cayce was in ten years for himself and that Bryce knew it, or that he knew the facts which would have been notice to any reasonable man'—when it is respectfully submitted that there was no testimony to show that the plaintiff knew or ought to have known of the death of Mrs. Elizabeth R. Cayce, or that the possession of the defendant, R. W. G. Cayce, was adverse in its character until shortly before the bringing of the action."

36—62

We proceed to consider the exceptions in their regular order:

*First.* The record shows that his Honor, the presiding Judge, ruled that said testimony was not competent—which, in effect, sustained the plaintiff's motion.

*Second.* The ground of objection to the testimony was not specified, and, therefore, is not properly before this Court for consideration. *Youngblood* v. *R. R. Co.,* 60 S. C., 13.

*Third.* This exception is subject to the same objection.

*Fourth.* What has just been said is also applicable to the fourth exception.

*Fifth.* The fifth exception is likewise amenable to this objection.

*Sixth.* The first assignment of error in this exception is that the presiding Judge erred in "leaving it to the jury to determine what things, in their judgment, should bring home notice of an adverse claim to the true owner." We do not see how the presiding Judge could have charged otherwise; for if he had told them what things, in his judgment, would bring home notice of the adverse claim, he certainly would have invaded the province of the jury. The second assignment of error in that exception will next be considered. The order of the presiding Judge refusing the motion for a new trial shows that there was such testimony.

*Seventh.* There was an entire absence of testimony tending "to show a paper title in the plaintiff *holding back to a grant from the State.*" If there is no testimony whatever to sustain a certain fact, it is not the expression of an opinion on the facts for the presiding Judge to so charge the jury. The second assignment of error in this exception cannot be sustained for the reason that the presiding Judge did not hold that the paper title proven by the plaintiff was not sufficient to establish a good title in him.

*Eighth.* If there was any testimony that the parties claimed from a common source of title, it was that they

claimed from Mrs. Eliazbeth R. Cayce. The charge was, therefore, not prejudicial in this respect. We fail to see wherein it can be said the charge was in respect to matters of fact. No question of trust arises under the pleadings, and the case of *Smythe* v. *Tolbert,* 22 S. C., 133, shows that even if the parties claimed from a common source, this would not preclude the defendant from showing he had a better title than that derived from a common source.

*Ninth.* The charge was not a comment on the facts, and even if it was erroneous, the error was not prejudicial to the appellant. The question whether Mrs. Elizabeth R. Cayce held adversely before 1856, was not in issue.

*Tenth.* It has been decided in several cases recently that if the presiding Judge makes an error in stating the issues raised by the pleadings, it is the duty of counsel to call his attention to the error, if they desire to make it the basis of an appeal.

*Eleventh.* His Honor used the language in the exception simply to show the defendant's contention.

*Twelfth.* We confess we are unable to understand, after his Honor had used the words, "and especially denies to his face the title," how it can be said he charged that holding the land ten years as therein stated would give a good title, "although he did not deny plaintiff's title to his face."

*Thirteenth.* As we have already stated, no question is raised by the pleadings as to a trust or judiciary relation between the parties; and in the absence of such an issue, the appellant has no just ground to complain of the charge.

*Fourteenth.* This question was disposed of by the presiding Judge in a manner satisfactory to this Court.

*Fifteenth.* This question is disposed of by what was said in considering the other exceptions.

*Sixteenth.* This Court is satisfied with the ruling of the presiding Judge as to this question.

*Seventeenth.* No trust is involved in this case by the pleadings, and there was no necessity to invoke the doctrine applicable to trusts estates.

*Eighteenth.* No specific error is assigned by this exception.

*Nineteenth.* This is a correct statement of the general doctrine when there are no fiduciary relations between the parties.

*Twentieth.* This involves only a question of fact, and is not reviewable by the Court.

*Twenty-first.* We agree with the Circuit Judge that there was testimony to sustain the facts therein mentioned, and that the motion for a new trial was properly refused.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.