7852

HUTCHINSON v. TURNER.

1. DEEDS in question held to be what they purport and not mortgages.
2. SUPREME COURT.—Under the Constitution as amended in article V, section 12, in January, 1911, it is necessary to have the concurrence of three justices to reverse a judgment below, but such judgment may be affirmed by an equal division of the four Justices.

Before WILSON, J., Greenwood, October, 1910. Affirmed.

Action by Hester Hutchinson, Whit Hutchinson and Maggie Means against John L. Turner. The Circuit decree is:

"This case was heard by me at the regular term of the Court of Common Pleas for Greenwood county, which convened on the 26th day of September, 1910.

"The case came up upon exceptions to the report of the master, W. J. Moore, Esq., by both plaintiffs and defendant.

"The action was brought by the plaintiffs alleging that they were the children and widow of Frank Hutchinson, and his only heirs at law, and was brought for the purpose of having a deed made by Frank Hutchinson to W. E. Henderson, made on the 20th day of January, 1899, declared to be a mortgage, and also to have a deed made by W. E. Henderson to the defendant, John L. Turner, on the 14th day of January, 1905, declared to be a mortgage, and to have an accounting of the rents and profits of the land made by the defendant, and asking that he be compelled to convey the land to the plaintiffs.

"The defendant answered, denying that the deeds were intended to be mortgages, but claiming, on the contrary, that the deeds were what they purported to be, regular fee simple titles, and also setting up the defense that he was an innocent purchaser for value, of the land in dispute, and demanding that the complaint be dismissed, with costs.

"The case was referred to the master of Greenwood county, to take the testimony and report on all the issues of law and fact. The master made and filed a report in the case, in which he found that the allegations of the complaint were true, and overruled the defense of innocent purchaser, set up by the defendant, and found that the rents and profits of the part of the land in the possession of the defendant was more than sufficient to pay the mortgage debt, and interest, and recommended that the plaintiffs have

the relief which they prayed for. The case was heard by special Judge Jos. A. McCullough, upon exceptions to said report of the master, filed by the defendant, and upon consideration of the matter he referred the case back to the master for the purpose of taking additional testimony upon certain matters set out in said order, which I do not deem it necessary to recite here.

"In the second report made by the master he modified his former report, to the extent of holding that the rents and profits of the part of the land held by the defendant lacked eighty-four dollars and three cents of being enough to pay the mortgage debt, which he found was owing by the plaintiffs to the defendant, and recommended that upon the payment by the plaintiffs of the said sum, that the said John L. Turner, the defendant, be required to convey the premises to the plaintiffs, and that the defendant pay the cost of the action. The defendant filed a number of exceptions, alleging errors of both law and fact, in the master's report, and the plaintiffs excepted because the master found that the plaintiffs should pay the defendant the said sum of eighty-four dollars and three cents.

"From the great mass of testimony, introduced on both sides, it seems to me that the following facts are well established by the written testimony in the case:

"As far back as 1882 Frank Hutchinson gave to W. E. Henderson a mortgage on the tract of land in dispute, for the sum of about eighty-two dollars. Subsequently he made three other mortgages on the land in dispute, one to W. H. Bailey, for one hundred and ten dollars; one to H. B. Reynolds, for forty-two and 50-100 dollars; and one to W. A. Lomax & Son, for one hundred and thirty-five dollars.

"The mortgage of Bailey was assigned to Henderson on the 7th day of December, 1892, and the mortgage of Reynolds was assigned to Henderson on November 10, 1894. Neither of these mortgages have any credits on them. On

the mortgage of Frank Hutchinson to W. E. Henderson there are several credits, but the amount due on that mortgage, on January 20, 1899, was forty-one and 70-100 dollars. There are no credits on the other two mortgages, and the amount due on the mortgage of W. H. Bailey, on January 20, 1899, was one hundred and seventy-three and 51-100 dollars. The amount due on the Reynolds mortgage on that day was fifty-seven dollars, making the total amount due Henderson by Frank Hutchinson, on January 20, 1899, the sum of two hundred seventy-two and 21-100 dollars.

"These three mortgages all covered the same thirty-six acres of land described in the complaint in this action.

"On the 20th day of January, 1899, Frank Hutchinson executed and delivered to W. E. Henderson his regular fee simple warranty deed to the land in dispute, for an expressed consideration in the deed of two hundred dollars, and on January 21, 1899, Hester Hutchinson, the wife of Frank, and one of the plaintiffs in this action, duly renounced her dower in said land to the grantee in said deed. On the same day, according to the indorsement on the said deed, the transfer was duly entered in the auditor's office of Greenwood county, and duly recorded in the clerk's office also.

"On January 23, 1899, W. A. Lomax & Son assigned their mortgage to W. E. Henderson, in consideration of the sum of fifty dollars. From the time of the conveyance of the land to Henderson by Hutchinson the latter ceased to return any land for taxation, but it appears to have been returned in the name of Henderson.

"Frank Hutchinson, according to the testimony, died on the 9th of September, 1904.

"On January 14, 1905, W. E. Henderson executed and delivered to Jno. L. Turner, the defendant herein, his regular fee simple warranty deed for an expressed consideration in the fee of two hundred and fifty dollars, and

on the same day Mrs. Henderson duly renounced her dower thereon. This deed was also entered in the auditor's office and the office of the clerk of the court for Greenwood county.

"On the same day, January 14, 1905, W. E. Henderson duly assigned and transferred to Jno. L. Turner all the mortgages which he held against Frank Hutchinson, four in number, and also signed an instrument of writing attached to the Bailey mortgage in which he stated that the mortgage was to be kept open to protect Turner from any claims of the heirs of Frank Hutchinson or other persons.

"On the same day, January 14, 1905, the defendant, Jno. L. Turner, and the plaintiff, Hester Hutchinson, entered into a written agreement in duplicate by which Turner agreed to sell Hester Hutchinson ten acres off the thirty-six acres and Hester agreed to pay therefor the sum of one hundred and thirty-two dollars and fifty cents, within two years from date, and agreed that if she failed to pay said sum within the time limited, then Turner was to be absolved, both in law and equity, from making the said deed, and was authorized to treat Hester as a tenant holding over after the termination of her lease.

"The above are the facts as shown by the documentary evidence.

"We now come to a statement of the oral testimony.

"The plaintiff testified that when she and her husband went to make the deed to Henderson, that Henderson told her that he wanted title to the land as security for the debt. She also says that Frank owed Henderson two hundred dollars on the debt. She testifies that when Frank died, which was over five years after the date of the deed, that Henderson told her the debt was two hundred and fifty dollars. She also testifies that she told the defendant, Turner, that the debt was two hundred and fifty dollars. She admits signing the agreement between herself and Turner to buy the ten acres of land, but claimed that she

thought it was a paper to secure a loan of thirty dollars that Turner was to make her. She also denied signing her dower on the deed from Frank Hutchinson to W. E. Henderson.

"D. J. Means testified that Henderson told him, after Frank's death, that Frank owed him three hundred dollars.

"John L. Tittle also testifies that he had a talk with Henderson, and that all he wanted was his money, and that he did not want the land.

"R. P. Blake also testified that about the latter part of the year 1904, or the first part of 1905, that Henderson wrote him that Frank and Hester owed him so much, and upon payment of that amount he would transfer the land. In another part of his testimony he swears that Henderson wrote him that upon payment of the amount due him he would transfer his interest, or papers.

"The above is, in substance, the testimony for the plaintiff, in regard to the circumstances of making the deed from Hutchinson to Henderson. Defendant denies these statements of the plaintiff's witnesses, and says he knew nothing of the transactions between Henderson and the Hutchinsons, but that he employed a lawyer to examine the titles to the property, and bought the land thinking he was getting a fee simple title. Ellis Graydon, Esq., a lawyer, then practicing at the Greenwood Bar, examined the titles and drew up and witnessed the contract between Hester Hutchinson and the defendant, Turner, and he testified that he read over the paper and explained it to her fully.

"In view of the testimony offered by the plaintiff, even if it was all true, would it be sufficient to declare these deeds to have been intended as mortgages?

"The rule governing cases of this kind is thus stated in the case of *Brown* v. *Bank,* 55 S. C., at page 9:

" 'For while it is undoubtedly true that a deed, which appears on its face to be an absolute conveyance, may, in equity, be declared to be a mortgage, if the evidence be

sufficient to show that such was the intention of the parties, yet it is equally true that the presumption is that the deed is what on its face it purports to be, an absolute conveyance, and to establish its character as a mortgage the evidence must be clear, unequivocal and convincing, for otherwise the natural presumption will prevail.' Citing 3 Pom. Eq. Ju., sec. 1196; *Arnold* v. *Mathesital,* Rich. Eq. 153; *Petty* v. *Petty,* 52 S. C. 54. When we refer to *Petty* v. *Petty,* the case just cited, we find this language:

" 'For before a court of equity can be expected to convert a solemn written instrument under seal into something very different from what it purports on its face to be, there should be strong evidence to show that such was the intention of the parties to such instrument; to use the language of Johnson, Ch., in *Arnold* v. *Matheson, supra,* "the evidence must be very clear and convincing." ' The evidence in this case is very far from clear and convincing to my mind. Frank Hutchinson made this deed January 20, 1899, and although he lived over five years and a half after that, so far as the testimony shows, he made no effort to redeem this land, or offered to pay anything on the debts which he undoubtedly owed on the land.

"Then, after his death, it does not appear from the testimony that his heirs at law, the plaintiffs herein, offered to pay Henderson anything on the land.

"It is true that the plaintiff, Hester Hutchinson, says that Henderson told her the debt was two hundred and fifty dollars; but this cannot be true, because if the debt was only two hundred dollars at the date of the deed, it would have amounted to over two hundred and fifty dollars at the time Henderson conveyed it to Turner. And then, although Hester Hutchinson is now claiming that the deed to Turner was only a mortgage, yet she made an agreement to buy ten acres of the land from Turner and utterly failed to carry out her contract in the two years she was given to comply. Turner testifies that he extended the time for two

years beyond the contract, and that it was only after he refused to extend the time any further that this suit was filed. In that he is borne out by the complaint, for it appears on the back of summons that he accepted service on January 28, 1909, which was a little over four years after the contract between him and Hester was made. So that at the time this action was commenced more than ten years had elapsed since Frank Hutchinson had made the deed to Henderson, on which Hester Hutchinson had renounced her dower. The plaintiffs have offered no satisfactory explanation of this long delay. In the case of *Shiver* v. *Author,* 54 S. C., at page 191, long delay is given as one of the reasons in that case for declining to hold that a deed absolute on its face was intended as a mortgage.

"These being my views on the testimony relating to the questions as to whether it was the intentions of the parties that the deeds in question were intended as mortgages, I hardly deem it necessary to discuss the defense of the defendant, that he was an innocent purchaser for value and without notice. But the fact that he employed a lawyer to examine the title, and the fact that there was no clear notice of the claim of the plaintiff brought home to the defendant, lead me to conclude that he was an innocent purchaser for value without notice of the claim of the plaintiff. But I do not rest my decision on this ground, for the written testimony and the acts of the parties in relation to the land, about which there can be no dispute, satisfy me that the deeds in question are just what they purport to be, and were not intended by the parties to be mortgages. Why should he have taken a new mortgage for only two hundred dollars, when he already held three mortgages, amounting at the time to two hundred and seventy-two dollars and twenty-one cents? Why did Hutchinson cease to return the land for taxation, if Henderson only held a mortgage? Why did Henderson return it in his own name for taxation, if the deed was only intended as a mortgage? I cannot

resist the conclusion that the deeds were what they pur-. ported to be, and that the plaintiffs have no standing in Court. I therefore sustain the first, second, third, fourth, eighth, tenth and eleventh exceptions to the master's report, filed by the defendant, and overrule all exceptions filed by the plaintiffs.

"It is therefore ordered, adjudged and decreed: That the above exceptions to the master's report be sustained, and that the complaint of the plaintiffs be dismissed with costs, to be taxed by the clerk of this Court.

"That the plaintiff, her agents, tenants and servants, be required to forthwith surrender possession to the defendant, John L. Turner, of the ten acres of land in her possession, and the house thereon, upon the exhibition to her of a certified copy of this decree."

The plaintiffs appeal on the following grounds:

I. "It is respectfully submitted that his Honor erred in overruling the findings of fact by the master, and finding and holding that the original deed of Frank Hutchinson to W. E. Henderson was what on its face it purported to be, an absolute deed, when there was no testimony going to support the said finding outside of the presumption of law that a paper is what on its face it purports to be.

II. "It is respectfully submitted that the fact that the grantee was allowed to remain in possession from the execution of the deed to his death without paying any rent, a period of six years, and his widow until the taking up of the papers by the defendant, without paying any rent, outside of the fact that Henderson often and frequently declared that the deed was only a security for a debt, and the fact that he gave a statement showing the amount due by Hutchinson to himself was conclusive of the fact that said deed was intended as a mortgage, and his Honor should have so held and sustained the findings of the master, and his not so finding and holding was error of law.

III. "It is respectfully submitted that his Honor erred in finding and holding that the defendant was a purchaser for value and without notice, when the defendant admitted in his testimony that he had notice of the amount of the indebtedness of Hutchinson to Henderson at the time of the transactions, and that it was at the instance of Hester Hutchinson that he bought the said land, or paid off the debt due by the plaintiffs to Henderson.

IV. "It is respectfully submitted that when the plaintiff makes out a *prima facie* case by his testimony, the necessary allegations having been made in the complaint, the burden of proof is then shifted to the defendant, and it is incumbent on him to show by the greater weight of the testimony that the deed under which he holds is what on its face it purports to be, and it was error in his Honor to hold that the defendant was a purchaser for value and without notice when he admitted that he had an express written notice of the debt and the amount of it at the time of the transaction; and when all the oral testimony showed that Henderson treated and acknowledged the deed to be only a security for a debt as long as he lived, and had given a written statement of the amount due on it, which said statement the defendant testified he saw or had it at the time of the transaction, and it was error of law for his Honor to hold otherwise.

V. "It is respectfully submitted that it was error of law in the Circuit Judge not to hold that the rental value of the land in dispute was 800 pounds of lint cotton per annum, there being evidence submitted to that effect which testimony was not disputed or denied in any particular.

VI. "It is respectfully submitted that the order of Judge McCullough was final so far as it extended, and when he referred the case back to the master to determine certain specific facts, to wit: who was in possession from the execution of the deed by Hutchinson to Henderson on 20th of January, 1899, to his death, and who was in possession

from the death of Hutchinson to the date of the deed by
Henderson to the defendant on January 14, 1905, and the
character of these possessions, with the decision of these
special facts, referred back, was a decision of the whole
case, and a subsequent Judge was without authority to
decide any other questions except those left open by his
predecessor, and it was error of law for Judge Wilson to
overrule or reverse the decision of Judge McCullough."

*Messrs. Giles & Ouzts,* for appellants, cite: 54 S. C. 184.

*Mr. Wm. N. Graydon,* contra, cites: 55 S. C. 51; 3 Rich.
Eq. 153.

The opinion in this case was filed March 3, 1911, but
remittitur held up on petition for rehearing until

April 5, 1911.   The opinion of the Court was deliv-
ered by

MR. JUSTICE GARY.   This is an action, for the purpose
of having certain deeds, declared to be mortgages, and for
an accounting of rents and profits.

The facts are fully stated, in the decree of his Honor the
Circuit Judge, which, together with the appellants' excep-
tions will be reported.

We are satisfied, that the deed executed by Frank Hutch-
inson to W. E. Henderson, on the 20th of January, 1899,
was intended as a mortgage; also, that John L. Turner, the
defendant, had notice that it was so intended, at the
time the deed was executed by W. E. Henderson,
to him, on the 14th of January, 1905; and that he
is, therefore, not a purchaser for valuable consideration
without notice.

The following instrument of writing was introduced in
evidence: "This indenture made this fourteenth of Jan-
uary, nineteen hundred and five, by and between John L.

Turner, party of the first part, and Hester Hutchinson, party of the second part,

"Witnesseth, That the said John L. Turner, has this day agreed to sell and convey to the said Hutchinson, all that tract or parcel of land, situate, lying, and being in Verdery township, county and State aforesaid, containing ten acres more or less, and bounded on the north by land of Hannah Field, on the east by land of Whit Hutchinson and W. P. Devlin, on the south by land of said John L. Turner, and on the west by land of Lucretia Hearst and others, being about one-third of the tract of land, formerly owned by Frank Hutchinson, and that he will make her a good and sufficient deed in fee simple, to the said tract of land, upon payment to him by her, of the sum of one hundred and thirty-two dollars and fifty cents, at any time within two years, from the date of this agreement.

"And, that the said Hester Hutchinson, hereby agrees, that she will pay the said sum of one hundred and thirty-two dollars and fifty cents to the said John L. Turner, within two years from the date of this agreement.

"And, it is expressly agreed, by and between the said parties, that time is of the essence of this contract, and that in the event of the nonpayment of said sum of money, or any part thereof, promptly at the time herein limited, then the said John L. Turner is absolutely discharged, at law and in equity, from all liability to make and execute such deed, and may treat the said Hester Hutchinson, as a tenant holding over after the termination of her lease, or may enforce the payment of said debt.

JOHN L. TURNER,          (L. S.)

her

HESTER X HUTCHINSON. (L. S.)'

mark

"In the presence of Ellis G. Graydon."

Mr. Ellis G. Graydon, an attorney of ability and long experience, testified as follows: "I prepared this contract

between Hester Hutchinson and Turner, on the 14th of January, 1905. I explained the whole contract to Hester and witnessed it. I explained the contract fully to Hester."

The said agreement did not undertake to bind any parties except Hester Hutchinson and John L. Turner.

Its provisions estopped her from disputing the title of Turner; and the only right in the land, which she thereafter had, was to require Turner to convey to her, the ten acres of land described in the said agreement, upon the payment of the sum of one hundred and thirty-two dollars and fifty cents, within two years from the date of the agreement.

John L. Turner testified as follows:

"When Hester Hutchinson could not pay me for her land, in the contract limit, I gave her another year. When that year was out and she did not pay, I gave her another year, in which to pay for the land. After that she asked me for further extension, I told her I would let her live in the house and work a patch, but I would take the balance of the land. Upon these conditions I granted her another year's time. Since then she refuses to surrender me possession of any of the land. She had never exercised any right of possession over any of the land, except that I sold her. She never claimed the land." Thus showing that she failed to comply with the requirements of the contract, even when further time was extended, and thereby forfeited all her rights thereunder. In so far as her interest in the land is concerned, John L. Turner must be regarded as the owner of the land.

The testimony shows that the plaintiff Whit Hutchinson and Maggie Means, and the defendant John L. Turner, now own the entire tract of land as tenants in common— the interest of Whit Hutchinson and Maggie Means each being one-third thereof and the interest of John L. Turner being the remaining third thereof.

The master in his report finds "that there is due by the plaintiffs to the defendant on his mortgage debt, the sum

of eighty-four and .03-100 dollars, principle and interest inclusive to date June 21st, 1910." We are satisfied that this is the correct amount now due under the mortgages.

When John L. Turner became the owner of Hester Hutchinson's one-third interest in the land, the indebtedness which was secured by a mortgage of the premises, was thereby proportionately extinguished, to wit, to the extent of one-third of eighty-four and .03-100 dollars, leaving an indebtedness of two-thirds of eighty-four and .03-100 dollars still, upon the two-thirds interest of Whit Hutchinson and Maggie Means. *Trimmier* v. *Wise,* 17 S. C. 499.

Upon the payment of two-thirds of said indebtedness, to wit, two-thirds of eighty-four and .03-100 dollars, the two-thirds interest of Whit Hutchinson and Maggie Means in said land, shall be discharged from the lien of all mortgages owned by the defendant.

The Court being equally divided in opinion the judgment of the Circuit Court stands affirmed.

MR. CHIEF JUSTICE JONES *and* MR. JUSTICE HYDRICK *think the judgment of the Circuit Court should be affirmed for the reasons therein stated.*

April 5, 1911. PER CURIAM order dismissing petition for rehearing.

The four Justices were equally divided in opinion.

The grounds upon which the petitioners rely, are as follows: "Sec. 12, art. V. of the Constitution of South Carolina, as amended and ratified on      day of January, 1911, is as follows: Sec. 12. ('In all cases decided by the Supreme Court, the concurrence of three of the Justices shall be necessary for the reversal of the judgment below, subject to the provisions hereinafter prescribed * * *.')

"The langauge of the old Constitution of 1895 is as follows: Sec. 12. ('In all cases decided by the Supreme Court

the concurrence of three of the Justices shall be necessary for the reversal of the judgment below, *but if the four Justices be equally* divided in opinion the judgment below shall be affirmed, subject to the provisions hereinafter prescribed * * *.')

"It is most respectfully submitted that since the said amendment the concurrence of three Justices of the Supreme Court is necessary to make a decision in any case. The words which occurred in the old Constitution, viz.: ('If the four Justices be equally divided in opinion the judgment below shall be affirmed'), having been left out, and therefore, repealed, necessarily requires the concurrence of three Justices."

At the time hereinbefore mentioned, the Constitution was also amended, by striking out the word "three" and inserting the word "four" on line two, section 2, article V, so as to read as follows:

"Sec. 2. The Supreme Court shall consist of a Chief Justice and four Associate Justices, any three of whom shall constitute a quorum for the transaction of business * * *."

When the Constitution was adopted it was therein provided that the Supreme Court should consist of an even number of Justices. And, as this was unusual, the framers deemed it advisable, in order to prevent confusion, to state the effect of a decision, when the Justices were evenly divided in opinion, viz.: that the judgment below, should be affirmed. This was merely the adoption of the rule which would have prevailed even without that provision, especially when there was the further provision, that, in all cases decided by the Supreme Court, the concurrence of three Justices was necessary, for a reversal of the judgment below.

If the Constitution had failed to provide that a less number than the five Justices composing the Court, should constitute a quorum for the transaction of business, then

the appellant would have ground for contending, that a decision could not be rendered, when the Justices are equally divided in opinion, as it could not be foretold whether the fifth Justice would concur with the two Justices in favor of a reversal, and thereby change the result.

As any three Justices are sufficient to constitute a quorum for the transaction of business a decision may be rendered when the Court is composed of three members, two of whom favor affirming the judgment below, while the third is in favor of reversing it.

The fact that a fourth Justice participates does not change this result—the concurrence of three being necessary for a reversal.

It is therefore ordered, that the petition be dismissed, and that the order heretofore granted staying the remittitur be revoked.

For the foregoing reasons, the order staying the remittitur, in the case of *Farrow* v. *Farrow,* is also revoked.