## 10382

### SUBER v. PARR SHOALS POWER CO.
### (102 S. E. 335.)

1. RELEASE—OTHER RELEASES INADMISSIBLE ON QUESTION WHETHER
   PARTICULAR RELEASE WAS OBTAINED BY FRAUD.—In action for damages
   from overflow of plaintiff's land by erection of dam by defendant,
   power company, involving question of whether plaintiff's release to
   defendant was fraudulently obtained, testimony as to other deeds
   and releases of other owners *held* inadmissible on issue of fraud,
   being *res inter alios acta.*

2. FRAUD—MUCH LATITUDE ALLOWED IN ADMISSION OF EVIDENCE.—
   Where fraud is charged much latitude is allowed in the admission of
   evidence, but the limits are within the wise discretion of the trial
   Judge.

3. FRAUDS, STATUTE OF—PURPOSE OF STATUTES.—The statute of fraud
   requires certain contracts to be in writing so as to avoid the uncer-
   tainty of parol evidence, and to avoid contests and litigation.

4. FRAUDS, STATUTE OF—WRITTEN CONTRACT FRAUDULENTLY OBTAINED
   VOID.—In order to prevent a statute intended to prevent fraud from
   being the means of perpetrating fraud, the law treats as nullity a
   written contract fraudulently obtained.

5. APPEAL AND ERROR—LOWER COURT'S DISCRETION IN LIMITING TESTI-
   MONY NOT TO BE INTERFERED WITH UNLESS ABUSED.—Appellate
   Court will not interfere with the exercise of discretion by trial Court
   in setting the limits of the testimony on issue of fraud, except in the
   case of abuse of discretion.

6. REFORMATION OF INSTRUMENTS—ATTACK ON CONTRACT FOR FRAUD
   MAY BE INSTITUTED IN COURT OF LAW, WHERE ACTION TO REFORM
   CONTRACT IS A SUIT IN EQUITY.—An attack on a contract for fraud
   and an action to reform a contract for mutual mistake are not to be
   confused, since former action may be instituted in a Court of law,
   while latter action is a suit in equity.

7. REFORMATION OF INSTRUMENTS—CONTRACT CONTAINING HONEST MIS-
   TAKE TO BE REFORMED BEFORE MADE THE BASIS OF AN ACTION.—If
   there is an honest mistake in the writing of a contract, the contract
   must first be reformed before it is the basis of an action.

8. RELEASE—REMARKS OF COURT IN RULING ON OBJECTION TO EVIDENCE
   NOT PREJUDICIAL.—In an action involving question of whether a
   release was procured by fraud, where the question for the Court was
   fraud, and not reformation, remarks of Court, in excluding certain
   testimony, as to proof required to show invalidity of release, *held*
   not to have prejudiced defendants by misleading jury into thinking
   that mere fraud was not sufficient to invalidate release.

9. TRIAL—REMARKS OF COURT IN REFUSING MOTION FOR NONSUIT HELD NOT IMPROPER AS ON WEIGHT OF EVIDENCE.—Remarks of Court in refusing motion for nonsuit that conflict in evidence on certain issue was sufficient to carry case to jury *held* not improper as against objection that Court, in making such remarks, intimated that it considered evidence on other issues not mentioned insufficient.

10. TRIAL—INSTRUCTIONS HELD NOT OBJECTIONABLE AS A CHARGE ON THE FACTS.—In action involving validity of release claimed to have been fraudulently obtained, instruction as to duty of reading instrument presented for one's signature *held* not objectionable as a charge on the facts.

11. CONTRACTS — PARTY ESTOPPED FROM REPUDIATING CONTRACT IN ABSENCE OF FRAUD.—The law estops a man from repudiating the contract which he has signed in the absence of fraud, notwithstanding failure to read contract before signing it.

12. WATERS AND WATERCOURSES—INSTRUCTION AUTHORIZING RECOVERY OF DAMAGES WHICH WERE THE "IMMEDIATE" RESULT OF INJURY EQUIVALENT TO INSTRUCTION AUTHORIZING DAMAGES WHICH WERE THE "PROXIMATE" RESULT.—In action of damages from overflow caused by erection of dam by defendant, instruction that "plaintiff could only recover damages which were the immediate result of the building of the dam" *held* not misleading in use of word "immediate;" the words "immediate" and "proximate" meaning the same thing.

Before GARY, J., Newberry, Summer term, 1917. Affirmed.

Action by W. H. Suber against the Parr Shoals Power Company. Judgment for defendants, and plaintiff appeals.

*Messrs. Wallace & Barron, Mower & Bynum, Blease & Blease,* for appellant. *Messrs. Wallace & Barron* submit: *It was competent for plaintiff to show by disinterested witnesses other instances of fraud, growing out of the same matter, perpetrated in the same way, similar in point of time and circumstances with his own:* 14th vol., 2d Ed. A. & E. Law, under the head of "General Scheme or Purpose to Defraud;" 14 A. & E. Law, 2d Ed., pp. 187-198; Cyc., vol. XX, pp. 118-119; 12 S. C. 154. *It was error in his Honor to hold: "If a man is asked to sign a paper and does it and is in a situation to inform himself of the contents of that paper, and doesn't avail himself of the opportunity of*

*informing himself of what is in that paper, he won't be heard afterwards to say that he didn't know certain things were in it."* 100 S. C. 20; 99 S. C. 383; 85 S. C. 128; 71 S. C. 150; 78 S. C. 419.    *Not only was it prejudicial error in so holding, but the remarks so made were to the jury a practical charge upon the facts:* 73 S. C. 383; 89 S. C. 232; 80 S. C. 383; 81 S. C. 374.    *It is reversible error for a trial Judge to state to a jury what fact or facts constitute negligence or contributory negligence:* 94 S. C. 324; 90 S. C. 183; 87 S. C. 190.    *As to fraudulent representations made by Henry Parr when procuring lease from appellant:* 96 S. C., pp. 70-72; R. & L. Law Dictionary; 50 S. C. 402; 20 Cyc. 57.    *His Honor further erred in charging the jury as follows: "If it was a fair transaction; if everything was fair about it, and Mr. Suber voluntarily signed it without being over-reached, then he is bound by the recitals in that instrument, and it is a question of fact for you to determine, not me,"* the error being, it is respectfully submitted, that if certain misrepresentations were honestly made by the agent of the defendant company, in procuring this deed or release, and were made upon the basis of a plat, and that a survey had been made, and that he possessed superior knowledge to the plaintiff, who relied upon his superior knowledge, and was misled thereby, even though such misrepresentations were honestly made, the unfair advantage thereby obtained would in law amount to technical fraud, sufficient to set aside the deed and release:* 78 S. C. 419; 85 S. C. 128; 100 S. C. 200. *His Honor erred in refusing to charge the eleventh request to charge of the plaintiff, which said eleventh request was as follows: "I, therefore, charge you, if you should find from the evidence that any person acting on behalf of the defendant procured from the plaintiff, Suber, the release set up; and, if you should further find from the preponderance of the evidence that such paper was procured by misrepresentations; even though such misrepresentations were honestly made, and with no intent to defraud, yet, if you find from*

*the evidence as a matter of fact, that the plaintiff relied upon such representations, as benig true, whereby he was induced to sign the same and was thereby over-reached and deceived, and in consequence thereof, an unfair advantage was gained, if you should so find from the evidence, then, I charge you, if the plaintiff has tendered back the consideration he is not bound by said release;" it being respectfully submitted that the said eleventh request contained a correct proposition of law, especially applicable to the facts and circumstances of this case, and should have been charged by his Honor, and the failure to charge the same was reversible error:* 101 S. C. 226; 110 U. S. 95; 5 S. C. L. 31; 163 Mass. 574. *It was error to charge the jury that plaintiff could only recover such damages as were the immediate result of the building of the dam:* 1 Strob. 525.

*Messrs. Elliott & Herbert,* and *Hunt, Hunt & Hunter,* for respondent. *Messrs. R. B. Herbert* and *Wm. Elliott* cite: *As to the exclusion of evidence:* 88 S. E. 28. *As to his Honor's ruling on the question of fraud:* 101 S. C. 221; 90 S. C. 196, and authorities there cited. *As to his Honor's definition of fraud:* 40 S. C. 80; vol. VI Words and Phrases, p. 5761, and authorities there cited.

February 23, 1920.

The opinion of the Court was delivered by MR. JUSTICE FRASER.

This is an action for damages from the overflow of land of the plaintiff, caused by the erection of a dam by the defendant in Broad River. The complaint alleged injury to the land and to the health of those living on the land. The defendant pleaded a deed to a part of the land and a release for injury to be suffered by reason of the erection of the dam. The plaintiff claimed that the release was not included in the contract between the parties and was fraudulently obtained. There are 16 exceptions, but not near so many questions in the case.

1. It seems that the defendant had secured a number of releases from the landowners along Broad River, and the plaintiff had several of these landowners as witnesses to testify as to their contracts in reference to their deeds and releases. Upon objection the testimony as to other deeds and releases was excluded. This exclusion of testimony is one assignment of error. The testimony was *res inter alios acta,* and under the general rule, was inadmissible. It is true that, where fraud is charged, such latitude is allowed, but the limits are within the wise discretion of the trial Judge. No abuse of discretion has been shown here. The statute of frauds requires certain contracts to be in writing. The contracts are put in writing so as to avoid the uncertainty of parol evidence and avoid contests and litigation. In order to prevent a statute intended to prevent fraud from being the means of perpetrating fraud, the law treats as a nullity a written contract fraudulently obtained. Fraud assumes innumerable forms, and no general rule can be formed to fit every case, so that it is left to the wise discretion of the Court to set the limits of the testimony and an appellate Court will not interfere, except in the case of an abuse of discretion—*i. e.,* manifest error. There is no manifest error here, and this assignment of error cannot be sustained.

2. In ruling on the exclusion of the above testimony, his Honor said:

"But it occurs to me that the testimony does not prove anything if you get it in. * * * Now, he can only be relieved from it by showing that he was placed in such a situation by either weakness of mind, intemperance, old age, or using the list that Justice McIver uses, lunacy, idiocy, drunkenness, coverture, and other incapacities. As I say, the rule is: Was he placed in such a situation that he could not exercise an independent mind? Unless that can be shown, then he can't be relieved from the voluntary act of signing that paper."

21—S. C. 113

There seems to have been a confusion, all too common, between an attack on a contract for fraud and an action to reform a contract for mutual mistake.   A contract may be attacked in a Court of law for fraud.   An action to 6-8   reform a contract for mutual mistake is a suit in equity.   If there is an honest mistake in the writing of a contract, then the contract must first be reformed before it is the basis of an action.   It is manifestly unfair to make a different contract in the midst of the trial and require him (the defendant) to defend against the new contract.   When his Honor came to charge the jury, he told them clearly, time and again, that it made no difference what were the terms of the contract, if the contract was procured by fraud, it was a nullity and no defense whatever.   The question before the Court was fraud, and not reformation. It is not prejudicial error to make the contract as binding as can be, provided the door was left open for the question of fraud, and that door was left, in the charge, wide open by oft-repeated and clear statements.   This exception is overruled.

3. The appellant's argument contains the following:

"The remarks of his Honor, in refusing the motion for nonsuit, that a nonsuit would not be proper whatever view he might take of the written instruments, and saying, in connection with his refusal of motion to direct a verdict, that there was a conflict as to what was the height of the dam (the release calling for a dam 34 feet high, and the evidence of the plaintiff showing that it was 36 feet high), and that, taking that view of it, he would refuse the motion because of this conflict, it practically amounted to say that the evidence as to fraud was insufficient; that the plaintiff had voluntarily signed the deed; that he did not fall in the class of an imbecile, idiot, or mentally incapacitated; and that, if it were not for the conflict in the testimony as to height of dam, he would grant the motion."

His Honor did not intimate any opinion on the question of fraud in the writing, but said, in effect, that there was one question of fact, to wit, the height of the dam that unquestionably carries the case to the jury. This exception is overruled.

4. It is claimed that his Honor erred in charging: "The law makes it the duty of a man to exercise ordinary prudence, and ordinary prudence would demand of any man to read an instrument of writing that is presented to him for signature."

It is claimed by appellant that this is a charge on the facts, since negligence is a question of fact for the jury. It may be that his Honor was unfortunate in the use of the word "negligence," but that is a question of words. The law does estop a man from repudiating the contract which he has signed in the absence of fraud, and it makes no difference what his failure to read his contract may be called. The exception that raises this question is overruled.

5. The appellant combines his seventh, eighth and ninth exceptions. The seventh exception states the question fairly and is as follows:

"His Honor further erred in charging the jury as follows: 'If it was a fair transaction, if everything was fair about it, and Mr. Suber voluntarily signed it without being overruled, then he is bound by the recitals in that instrument, and it is a question of fact for you to determine, not me'—the error being, it is respectfully submitted, that if certain misrepresentations were honestly made by the agent of the defendant company in procuring this deed or release, and were made upon the basis of a plat, and that a survey had been made, and that he possessed superior knowledge to the plaintiff, who relied upon his superior knowledge, and was misled thereby, even though such misrepresentations were honestly made, the unfair advantage thereby obtained would in law amount to a technical fraud, sufficient to set aside the deed and release."

The authority cited by appelllant fully meets his objection.

In the case of *Crosby v. Land Co.,* 96 S. C. 70-72, 79 S. E. 897, 898, the Supreme Court said:

"Was there fraud? There was. Rapalje & Lawrence Law Dictionary: 'Fraud is used in many senses, but the point common to all of them is pecuniary advantage gained by unfair means.' "

This is another instance of confusion between fraud and reformation.

What has been said disposes of the exceptions 10 to 14, inclusive.

6. Appellant says in his argument: "We submit that his Honor erred when he instructed the jury, as complained of in this exception, that the plaintiff could only recover damages which were the immediate result of the building of the dam."

I think this exception should be sustained. The immediate result of the building of the dam was to raise the water at the dam. The proximate result may have been the overflow of land a mile away. The defendant is liable, if liable at all, for the proximate result of raising the dam. The proximate cause may not be the immediate cause, and the proximate result may not be the immediate result. In Ruling Case Law, vol. XX, at page 110, we find:

"The definition of proximate cause and proximate result the textbooks and reports vary much in expression and sometimes in idea. Perhaps the best and most widely quoted definition is the following: The proximate cause of an injury is the cause which, in natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury and without which the result would not have occurred."

At page 112: "By proximate cause is not meant the last act of cause, or nearest act to injury."

Many definitions are given, but none of them confine proximate cause and proximate result to the immediate cause or the immediate result.

The majority of this Court think that the judgment should be affirmed; and it is so ordered.

Mr. Chief Justice Gary, *concurring and dissenting.* I concur in the opinion of Mr. Justice Fraser, except in so far as he sustains the fifteenth exception. So much of the charge as is therein quoted was really too favorable to the plaintiff. Furthermore, the words "proximate" and "immediate" mean the same thing.

Mr. Justice Hydrick; *concurring and dissenting.* I think the fifteenth exception should be overruled, and the judgment should be affirmed. When the charge is read as a whole, it is clear that the jury could not have been mislead by the definition of "proximate" as "immediate." If, indeed, they do not mean the same thing, they mean very nearly the same thing. Some of the best dictionaries put them down as synonymous. Some Courts hold they are synonymous; others *contra.* See 6 Words & Phrases 5761; 32 Cyc. 745. But juries pay little attention to verbal refine ments. If the jury had thought that plaintiff ought to recover, they would not have hesitated to find for him on the ground that the dam might not have been the "immediate" cause of the injury complained of.

Mr. Justice Watts. I concur in the opinion of Chief Justice herein.

Mr. Justice Gage. I vote for affirmance and concur in what the Chief Justice and Justice Hydrick have said.