### ALDRIDGE, ADMR. v. WATTS MILL *ET AL.*

#### (127 S. E., 213)

1. APPEAL AND ERROR—THAT COUNSEL DID NOT SPECIFY OBJECTIONS IN RENEWING OBJECTION TO TESTIMONY PREVIOUSLY EXCLUDED HELD NOT TO PRECLUDE REVIEW.—That counsel in renewing objection generally to particular line of testimony which had been previously excluded did not specify objections, as done in first instance, *held* not to preclude review.

2. TRIAL—EVIDENCE THAT DEFENDANT CARRIED INSURANCE, PROCEEDS OF WHICH WAS PAID TO WIDOW, HELD PROPERLY EXCLUDED.—Evidence that defendant, sued for wrongful death of employee, carried insurance, proceeds of which were paid to employee's widow, *held* sufficiently analogous to evidence that defendant carried indemnity insurance to require its exclusion.

3. RELEASE—WIDOW'S RELEASE, IF VALID, HELD TO PRECLUDE ADMINISTRATOR'S ACTION FOR HUSBAND'S DEATH FOR HER BENEFIT.—Release given by widow of deceased employee, if valid, *held* to preclude action for her benefit by administrator.

4. FRAUD—MUCH LATITUDE ALLOWED IN ADMISSION OF EVIDENCE.—Much latitude is allowed in admission of evidence on issue of fraud.

5. RELEASE—EVIDENCE HELD ADMISSIBLE ON ISSUE OF FRAUD IN PROCUREMENT OF RELEASE.—In administrator's action for death of employee, brought for benefit of widow, where release given by widow was attacked on ground of fraud, evidence that at time such release was given widow had received $1,400 as proceeds of insurance policy, carried by defendant, and was given an additional $500 in consideration of release, *held* admissible as showing or tending to show that release was voluntarily given.

6. TRIAL—INSTRUCTION AS TO RIGHT OF EMPLOYEE'S WIDOW TO RETAIN CHECK GIVEN BY DEFENDANT EMPLOYER IN CONSIDERATION OF RELEASE HELD PROPER.—In administrator's action for death of employee brought for benefit of widow, instruction that if jury found for defendant's widow would be entitled to retain check given in consideration of alleged invalid release, but that if it found for plaintiff, she would not be entitled to retain such check, *held* not improperly given.

Before JOHNSON, J., Laurens, November, 1923. Affirmed.

Action by A. T. Aldridge as Administrator of A. E. Aldridge, deceased, against Watts Mill and Huntington & Guerry. From a verdict for defendants the plaintiff appeals.

*Messrs. Nicholls & Wyche* and *Quinn, Hamrick & Harris,* for appellant, cite: *Punitive damages:* 78 S. C., 72; 88 S. C., 14; 116 S. C., 319; 65 S. C., 326; 127 S. C. *Duty owed to deceased by Watts Mill:* 72 S. C., 411; 72 S. C., 420; 51 Am. Rep., 159; 14 R. C. L., 81, 82, 83; 48 Fed., 914; 26 L. R. A., 524; 102 U. S., 580; 51 Am. Rep., 159. *Duty of owner to warn as to latent dangers:* 72 S. C., 420; 72 S. C., 411.

*Messrs. Simpson Cooper & Babb,* for Watts Mill, cite: *Evidence as to liability insurance properly rejected:* 92 S. C., 236; 118 S. E., 902; 120 S. C., 285. *Warning to witness not prejudicial error:* 185 S. W., 825; 108 S. C., 387; 165 Pac., 179; 185 Pac., 27; 221 S. W., 773; 188 N. W,. 935; 192 Pac., 601; 95 S. C., 180; 110 S. C., 357. *Court properly allowed attorneys for mill to cross-examine witnesses of its codefendants:* 79 N. E., 775; 3 So., 488; 23 N. E., 51; 109 S. C., 81. *Testimony as to other shafts competent*

*under circumstances:* 60 S. C., 109; 74 S. C., 234; 86 S. C., 71; 98 S. C., 130. *Exception too general:* 99 S. C., 217; 100 'S. C., 43; 40 S. C., 363; 40 S. C., 537; 43 S. C., 99; 45 S. E., 244; 47 S. C., 91; 51 S. C., 55; 52 S. C., 166. *Assumption of risk:* 106 S. W., 865; 110 S. C., 154; 72 S. C., 72; 233 U. S., 492; 84 S. C., 287; 102 S. C., 408; 61 S. C., 489; 104 S. E., 31; 104 S. C., 451.

*Messrs. Haynsworth & Haynsworth,* for respondent Huntington & Guerry, cite: *Liability insurance improperly mentioned:* 125 S. C., 442; 120 S. C., 285; 92 S. C., 236. *Admonition to witness proper:* 108 S. C., 387; 110 N. E., 381. *Right of defendant to cross-examine witnesses of co-defendant:* 23 N. E., 51; 152 Pac., 462; 23 S. E., 355; 59 Pac., 950; 2 Wig. Ev. Sec., 916; 109 S. C., 78; 89 S. C., 234. *Objection to testimony too general:* 87 S. C., 18; 121 S. C., 49; 94 S. C., 324; 95 S. C., 441; 63 S. C., 559; 72 S. C., 411; 73 S. C., 102; 75 S. C., 225; 86 S. C., 66; 89 S. C., 378; 50 S. C., 9. *Exceptions too general:* 123 S. C., 360; 123 S. C., 21; 59 S. C., 1; 51 S. C., 55; 100 S. C., 43; 70 S. C., 234; 86 S. C., 64; 88 S. C., 80. *Assumption of risk properly charged:* 80 S. C., 232; 72 S. C., 346; 86 S. C., 116; 86 S. C., 69; 84 S. C., 283; 61 S. C., 468; 86 S. C., 234; 87 S. C., 505; 103 S. C., 455; 120 S. C., 473. *Huntington & Guerry not responsible for unsafe condition of mill premises:* 73 S. E., 64; 45 L. R. A. (N. S.), 271; 127 N. W., 626; 94 Atl., 136; 41 L. R. A., 200; 66 A. S. R., 133; 54 Atl., 896. *No duty to guard against dangers not reasonably foreseen:* 87 S. E., 418; 126 S. C., 231. *Choice of dangerous way:* 86 S. C., 69. *No fraud in procuring release:* 14 A. & E. Enc. L., 54.

March 19, 1925.

The opinion of the Court was delivered by MR. JUSTICE MARION.

Action for damages on account of the death of A. E. Aldridge by alleged wrongful act of the defendants, brought

by the administrator for the benefit of his intestate's widow, Hester C. Aldridge, as sole beneficiary. From judgment on verdict for the defendants, plaintiff appeals.

"The answer of respondent Watts Mill admits the death of Aldridge and denies the other allegations of the complaint, and alleges contributory negligence and contributory willfulness and wantonness on the part of A. E. Aldridge, and assumption of risk. The respondent Huntington & Guerry admits the death of A. E. Aldridge, and alleges contributory negligence and contributory willfulness and wantonness, assumption of risk, and sets up a release from Hester C. Aldridge, the widow of A. E. Aldridge, deceased."

Appellant's fifth exception imputes error to the trial Court in permitting the defendant Huntington & Guerry (a corporation) to elicit, on cross-examination, over objection, testimony from the plaintiff's witness, Hester C. Aldridge, to the effect that she had received the sum of $1,400 from a life insurance policy on the life of her husband, A. E. Aldridge, which had been carried by the said Huntington & Guerry. When this testimony was first sought to be elicited from the defendant's witness, Huntington, it was excluded after the following colloquy:

"Mr. Haynsworth: My question was whether or not Mr. Huntington carried insurance for the benefit of his employees, life insurance at his own expense or the expense of the company, without cost to Aldridge, and the proceeds of the insurance, $1,400, were paid to Mrs. Aldridge.

"Mr. Haynsworth: That is competent because it bears upon the question of damages she has sustained. The reply to this release here is fraud. I think I can show Huntington's attitude towards this matter, whether he has acted in a blood-seeking manner or in a generous manner.

"Mr. Nicholls: Anything that the insurance company may have paid to this lady was a separate and distinct transaction, they had to pay it, it doesn't make any difference how this man was killed. This was paid by the insurance com-

pany. Suppose her father had died and left her $1,400, would that have anything to do with this case? Suppose he left his own insurance. .

"Court: I will have to sustain the objection, Mr. Haynsworth."

Subsequently, substantially the same testimony was admitted on the cross-examination of Hester C. Aldridge, after the following colloquy and ruling:

"Mr. Haynsworth: I want to submit the question that I asked when the jury was sent out, the question I asked the other witness.

"The Court: What is your theory of the competency of that testimony?

"Mr. Haynsworth: It bears upon her attitude towards him, the relations of her and Huntington, when Huntington was up there, as she said, 'trying to defend himself.' I want to show she didn't intend to sue.

"The Court: I will let you ask the question for that purpose.

"Mr. Nicholls: We object to this testimony.

"Q. After your husband's death Huntington came to you and told you that they had carried life insurance for your husband, Huntington & Guerry had paid the premiums, and that it had not cost your husband a penny, and that you were going to get $1,400? A. He didn't tell me anything about it.

"Q. He didn't tell you about the life insurance? A. Of course, I knew it.

"Q. You didn't have any dealings with Huntington about it? A. Yes, sir.

"Q. You did get $1,400? A. Yes, sir.

"Q. And the premiums had not cost your husband a penny? A. I don't know about that."

Respondent makes the point that the ground of objection to this testimony was not stated, and invokes the rule that, when the ground of objection specified

and relied on here was not stated at the trial, alleged error
in the admission of evidence will not be considered by this
Court. *Bryce v. Cayce,* 62 S. C., 546, 562; 40 S. E., 948.
*Rhodes v. Granby Cotton Mills,* 87 S. C., 18, 28; 68 S. E.,
824. *Thornhill v. Director General,* 121 S. C., 49; 113 S. E.,
370; 24 A. L. R., 617. That point upon the record here
made, cannot be sustained. In propounding the question as
to the insurance matter upon the cross-examination of Mrs.
Aldridge, defendant's counsel stated that it was "the question
* * * asked the other witness." In renewing the objection
generally to the admission of this testimony, we think it is
fair to assume that the ground of objection was the same as
that which had been previously stated by plaintiff's counsel
—a ground of which both the Court and defendants had
been fully apprised. Since the reason for the rule requiring
that the grounds of objection be stated lies largely in the
consideration that error may not fairly be imputed to a trial
Judge for a ruling upon or involving a point not raised be-
fore him, if in the course of a trial the ground of objection
to a certain line of testimony has once been sufficiently
presented to the presiding Judge, it would seem clear that a
mere failure to repeat the grounds of the objection when it
is subsequently renewed should not be held to justify the
application of the rule. We are therefore of the opinion
that the appellant is entitled to have the question raised as
to the inadmissibility of this testimony upon the ground
first stated, considered by this Court.

That ground of objection was, in substance, that the
testimony sought to be adduced was irrelevant in
that it related to "a separate and distinct transaction"
which had nothing "to do with this case." In so far as the
trial of the cause involved the determination of the general
issued joined as to whether the defendant were liable in
damages for the alleged wrongful death of plaintiff's
intestate, there can be no doubt that the testimony objected
to was legally irrelevant and of a character reasonably

calculated to prejudice the interests of the objecting party. Upon that issue the harmful tendency of this testimony, from the viewpoint of the plaintiff's interests, is sufficiently analogous to that of evidence establishing that the defendant carried indemnity insurance (*Horsford v. Glass Co.,* 92 S. C., 258; 75 S. E., 533. *Burgess v. Germany-Roy-Brown Co.,* 120 S. C., 285; 113 S. E., 118. *Duke v. Parker* [S. C.] 118 S. E., 802) to require its exclusion. The Circuit Judge, in effect, so held. When the testimony was first offered, the issue as to the validity of the release had not been raised by the evidence then before the Court. In that status of the case the testimony was properly excluded. But when the defendant Huntington & Guerry had proved the execution of the release and introduced the instrument in evidence and the plaintiff had introduced evidence tending to impeach its validity, an issue was raised between the plaintiff and the defendant Huntington & Guerry which, in a sense that is sufficiently apparent, took priority over the issue as to whether that defendant was responsible in damages for the wrongful death of the plaintiff's intestate. If the release was valid, regardless of liability under the general issue, the plaintiff was not entitled to recover against Huntington & Guerry. The trial Court so ruled and charged, and that ruling no exception has been taken. In that state of the evidentiary facts, the vital and paramount issue— certainly, as between the plaintiff and Huntington & Guerry —was as to the validity of the release. The plaintiff undertook to attack the validity of the release on the ground of fraud, by adducing the testimony of Mrs. Aldridge, the widow and beneficiary of the action on trial, to the effect that she had signed the release in reliance upon the representation of Mr. Huntington that her execution of the paper "could not and would not interfere with this action of the estate." The paper writing signed by Mrs. Aldridge is as follows:

"I, Hester C. Aldridge, of Forest City, N. C., do hereby acknowledge payment to me by Huntington & Guerry of the sum of five hundred ($500.00) dollars, and in consideration of said payment, I do hereby covenant not to sue Huntington & Guerry nor to permit said Huntington & Guerry to be sued for my benefit or on my behalf on account of any claims or causes of action growing out of the injury and death of Adolphus E. Aldridge, on or about March 24th, 1922, and I do hereby covenant to save harmless and protect the said Huntington & Guerry from any loss or liability on account of any claim or causes of action on account of or growing out of the injuries to and death of said Adolphus E. Aldridge.

"I do hereby represent that I am the widow of said Adolphus E. Aldridge, and that said Adolphus E. Aldridge left no child or children, and that I am the only person for whose benefit action could be maintained under section 3955 and 3956, of the Code of Laws of South Carolina of 1912."

There is no evidence tending to establish that Mrs. Aldridge was illiterate, mentally deficient, or otherwise incompetent to understand the meaning of that paper. The issue of fraud turned upon the one narrow question of whether she had in fact been induced to sign the release by the verbal representation of Huntington that it would not interfere with the action by the administrator for her benefit. The Circuit Judge admitted the testimony as to the life insurance which had been carried by Huntington & Guerry and the proceeds of which had been received by Mrs. Aldridge, upon the theory that those facts were within the contemplation of Mrs. Aldridge at the time of the execution of the release and had a legitimate tendency to show that her attitude toward Huntington & Guerry on that account was such as to make her entirely willing to execute the release freely and with full understanding of its meaning and effect and that, contrary to her subsequent claim of fraud, she had in fact voluntarily executed the re-

lease with a correct understanding of its terms. We think the fact that she was receiving the substantial sum of $1,400 from insurance carried on the life of the husband by his employers, regardless of the motives of the employers in carrying the insurance, might very reasonably and probably have influenced Mrs. Aldridge in determining to accept their offer of the sum of $500 in full settlement of more or less doubtful claims or lawsuits for damages against these employers. If so, the legitimate bearing of these facts, as tending to show voluntary and intelligent action in executing the release and to negative the idea of action induced by fraudulent misrepresentation, is apparent. The issue of fraud was raised by the plaintiff. It is an issue upon which much latitude is properly allowed in the admission of evidence. *Suber v. Parr Shoals Co.,* 113 S. C., 317, 321; 102 S. E., 335. In determining that issue, we are therefore of the opinion that, for the purpose of soundly and justly appraising the testimony adduced by plaintiff to establish the charge of fraud, the testimony objected to was not improperly admitted.

The fifteenth exception is directed to the contention that the trial Judge committed error of law in charging the jury in response to an inquiry from them "that, if you find for the defendants in the case, the plaintiff would be entitled to retain the check (given by Huntington & Guerry to Mrs. Aldridge in consideration of the release) and cash it at her option; if you find for the plaintiff in the case, that she would not be entitled to cash the check." It is argued that this charge related to a matter which "was none of the jury's business," and that the effect, taken in connection with the admission of the testimony as to the insurance transaction, was unfairly to prejudice plaintiff's case. In view of the evidence which plaintiff had adduced to the effect that the check received by Mrs. Aldridge had been tendered back to Huntington & Guerry and had never been cashed, we cannot say that the inquiry from a jury of laymen

as to the effect of a verdict, one way or the other, upon the property rights of the parties in the outstanding check, was not directed to a legitimate subject of inquiry. Certainly, if plaintiff were entitled to recover, whether the amount of damages should be increased or decreased by the amount of the check already received by the sole beneficiary of the action, was a pertinent and proper consideration. The exception therefore must be overruled.

Appellant's counsel, in their oral argument, very properly conceded that the two exceptions, considered and disposed of in the foregoing discussion, presented the substantial points raised by the appeal. We have carefully examined the remaining exceptions, however, and have found no prejudicial error.

A majority of the Court as constituted for the hearing of this cause being of the opinion the judgment should be affirmed (*Hutchinson v. Turner,* 88 S. C., 318; 70 S. E., 410), all the exceptions are overruled, and the judgment of the Circuit Court is affirmed.

MR. ACTING ASSOCIATE JUSTICE W. C. COTHRAN concurs.

MR. JUSTICE FRASER dissents.

MR. JUSTICE WATTS disqualified.

MR. CHIEF JUSTICE CARY and MR. JUSTICE T. P. COTHRAN did not participate.

MR. JUSTICE FRASER: I dissent. I do not see that the evidence as to the life insurance is relevant in any view. Money corporations are established to produce, ultimately, money. It is true a money corporation may establish a hospital for the care and restoration of those injured or worn out in their service, and, while benevolent officials rejoice in the resultant benefit to those in its employ, there must be a pecuniary benefit to warrant the expenditure of corporate funds. The resultant benefit may draw employees to its service or retain them after they come. It may save time and promote efficiency. It is too often claimed that that which is done and justified by financial reasons is done

for sweet charity's sake. Liberal dealings with employees is good policy. A business corporation has no· right to do charity for charity's sake. The doing of personal favors does not even tend to disprove fraud. There is no more effectual means of fraud than the doing of favors. The fear of a charge of ingratitude is the most efficient means of driving sometimes good men and women into doing evil. It often happens that an old man or woman who has property is.taken care of by some one, and at his or her death it is found that the deceased has made a will, leaving all or a great portion of his property to the one who has made the closing days of his life comfortable, and the will is attacked for fraud. The question is, What was the motive for the services admittedly rendered? If these acts were done from love and kindness of heart, then it is all right. If done for the purpose of securing an undue influence, then it is all wrong. If the proceeds of a policy of life insurance can be used to fix the amount of damage, then why may not all proceeds of life insurance be used to diminish the amount of damage, and why not the inheritance be used for the same purpose? I do not see that it is relevent in any view of the case. I think our cases have decided that policies of insurance are irrelevant, and wisely so.

I think it was prejudicial error to tell the jury that, if the verdict was for the defendant, the plaintiff would be entitled to retain and cash the check for the $500. I do not see how the disposition of the check could affect the question of fraud. It is easy to see how it would affect the verdict.

For these reasons, I dissent.